UPTON (ELLIOTT v.). See Case No. 6,547.

---

## Case No. 16,800.

### UPTON v. ENGLEHART.

[3 Dill. 496;[1] 3 Ins. Law J. 743; 8 West. Jur. 345.]

Circuit Court, D. Iowa. May Term, 1874.

CONTRACT TO PURCHASE STOCK IN INCORPORATED COMPANIES—DEFENCES—FRAUD IN PROCURING SUBSCRIPTION.

1. The three-fold relation of stockholders in an incorporated company to the corporation, to

---

[1] [Reported by Hon. John F. Dillon. Circuit Judge, and here reprinted by permission.]

other stockholders, and to the creditors of the corporation considered.

2. The effect of fraud practiced by an agent of a company to induce a person to subscribe for stock therein, considered, and the doctrine asserted that as between the company and the person thus induced by fraudulent and deceptive statements to take the stock therein, the same principles apply as would apply to like contracts between individuals.
[Cited in Florida Land & Imp. Co. v. Merrill, 2 C. C. A. 632, 52 Fed. 80.]

3. In such a case the company cannot retain any benefit which it has obtained through the fraud of its agent, and it is ordinarily no answer to the claim of a person to be relieved against a contract procured from him by fraud, to show that by more inquiry he could have learned the truth.

4. Applying this rule it was held that there might be fraudulent representations concerning the laws of another state and the provisions of the charter of the company granted therein.

5. A contract to purchase shares induced by fraudulent representations or concealment is not void, but only voidable—that is, it is valid until disaffirmed, and not void until affirmed. And where the rights of creditors are concerned the contract must be repudiated promptly on discovering the fraud, or it will be held binding as to them.
[Cited in Foreman v. Bigelow, Case No. 4,-934; Merrill v. Florida Land & Imp. Co., 8 C. C. A. 447, 60 Fed. 21.]

6. How repudiated, and when, see cases cited in the opinion, and see note, and Upton v. Triblecock [91 U. S. 45].
[Cited in Duffield v. Barnum Wire & Iron Works, 64 Mich. 301, 31 N. W. 314; Weisiger v. Richmond Ice Mach. Co., 90 Va. 798, 20 S. E. 362.]

On demurrer to second special defence pleaded in the answer. The action is by the plaintiff [C. W. Upton] as assignee in bankruptcy of the Great Western Insurance Company of Chicago, to recover of the defendant [Andrew Englehart] the amount due on a contract by which the defendant in September, 1870, became, as it is alleged, the purchaser of five shares of stock in that company. The petition sets out that the contract to purchase stock was verbal and that the company delivered and the defendant accepted certificates for five shares thereof of $100 each; that the company sustained heavy losses by the Chicago fire; that on the 6th day of February, 1872, it was adjudicated a bankrupt by the United States district court, for the Northern district of Illinois, which subsequently, July 5th, 1872, ordered that the assignee collect the entire amount unpaid on the capital stock of the company. The plaintiff has accordingly brought in this court numerous actions against persons alleged to be stockholders in the company, residing in this state, and they make substantially the same defences.

Nourse, Kauffman & Holmes, for plaintiff.
E. W. Eastman, H. B. Fouke, and J. L. Frazier, for defendant.

Before DILLON, Circuit Judge, and LOVE, District Judge.

DILLON, Circuit Judge. Whoever becomes a stockholder in an incorporated company sustains a three-fold relation: First, to the artificial person called ·the corporation. Second, to the other stockholders in the same company, or in other words, his associates or partners, who by force of statute are clothed with corporate capacity. And third, to the creditors of the corporation. It is essential to bear these several relations in mind in determining the questions here presented. The capital is supplied by the shareholders, who alone participate in the gains or pecuniary advantages which may accrue from the carrying on of the corporate enterprise. The shareholders are the real parties in interest; the incorporating statute empowering them to contract and be contracted with through the medium of a corporate representative.

In the case before us, the plaintiff sues as the assignee in bankruptcy of the corporation, and therefore can enforce not only the rights which the corporation could have enforced if insolvency or bankruptcy had not supervened, but the rights of general creditors as well.

It appears by the pleadings, that the company was created by a charter of the state of Illinois, and that prior to the alleged contract with the defendant, it re-organized under the general incorporation act of that state (Gross's St. Ill. c. 53, p. 352). This act authorizes persons to associate themselves as an insurance company and adopt a charter and file the same in the office of the auditor of public accounts and publish notice thereof. This officer is to cause an examination to be made as to whether the required amount of capital in money, stock and bonds has been raised; and each company is required to make an annual statement of assets and liabilities, which is to be included in the auditor's regular report.

The section of the answer to which the demurrer under consideration relates, avers that the company sent an agent to Iowa to procure its stock to be taken, and sets forth the facts intended to show that this agent made false and fraudulent representations of a material character to induce the defendant to agree to become a stockholder therein. Among other representations one was that $20 per share would be full payment for the stock and that the remaining eighty per cent was "non-assessable." And such was the defendant's written agreement with the company set out in the answer, dated September 14, 1870. But the certificate of stock which the defendant received, though marked "non-assessable," does not otherwise state that the stock is fully paid for or that no more than the twenty per cent therein mentioned is to be called in.

The answer alleges that the purchase of the stock was induced by the fraudulent acts and representations of the agent of the company and that the "defendant is in no way bound thereby, and that he long ago repudiated said purchase by refusing to pay any more" of the installments.

And here the plea may be considered in a double aspect: First, does it set forth a sufficient answer if the action were one by the company before insolvency to enforce payment for the stock? Second, does it set forth a sufficient answer to such an action when brought in the interest of creditors of the company after it has failed?

Assuming that the statements in the plea are true, it appears that the defendant was induced to agree to become a shareholder by false and deceptive statements of the agent, and even of the company itself as shown by the character of the certificate it issued. The effect· of fraud practised to induce a contract to subscribe to stock or purchase shares is, as respects the company and the person deceived, the same as in other contracts, with the modifications arising from the peculiar nature of the transaction as to repudiating or rescinding the contract, which will be adverted to further along. Speaking of contracts to become a shareholder, induced by the fraud of the company or its agents, Lord Romilly says: "Contracts of this description between an individual and a company, so far as misrepresentation or suppression of .truth is concerned, are to be treated like contracts between any two individuals. If one man makes false statement which misleads another, the way in which that is to be treated affords the example for the way in which a contract is to be treated where a company makes a false statement which misleads an individual." Directors, etc., of Central Ry. of Venezuela v. Kisch (1867) L. R. 2 H. L. 99, 125; Smith's Case, 2 Ch. App. 604, 609.

The effect of agreements to purchase shares in companies has, of late years, been oftentimes before the courts of Great Britain and the general principles of law are well settled.

The rule sanctioned by the house of lords is that "where a person has been drawn into a contract to purchase shares belonging to a company by fraudulent misrepresentations or by fraudulent concealment of the directors, and the directors seek to enforce the contract, or the person who has been deceived institutes a suit against the company to rescind the contract on the ground of fraud, the purchaser cannot be held to his contract, because a company cannot retain any benefit which they have obtained through the fraud of their agent." Oakes v. Turquand (1867) L. R. 2 H. L. 325, 344, in which Lord Chancellor Chelmsford approves Western Bank of Scotland v. Addie, L. R. 1 H. L. Sc. 145, decided on general principles. This principle has been so often decided and is so well established that it is not necessary to cite the many cases upon the subject.

The fraudulent misrepresentation or concealment must of course relate to material facts, but if it does, and has induced a person using reasonable caution and judgment, to enter into a contract to purchase shares, it is ordinarily no answer to his claim to be relieved of the contract that by more vigilance he might have discovered the deception. This point is expressly adjudged by the house of lords in Directors, etc., of Central Ry. Co. of Venezuela v. Kisch (1867) L. R. 2 H. L. 99.

In the case just cited, Kisch sought to be relieved of his contract to purchase shares in the railway company, and it was objected that he had "no ground of complaint because he had an opportunity of ascertaining the truth of the representations contained in the prospectus, of which he did not choose to avail himself; that in his letter of application to purchase shares he agreed to be bound by all the conditions and stipulations contained in the memorandum and articles of association of the company, which, if he had examined, would have given him all the information necessary to correct the errors and omissions in the prospectus." To this position the lord chancellor made answer: "But it appears to me that when it is once established that there has been any fraudulent misrepresentation or wilful concealment by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him he might have known the truth by proper inquiry." He has a right to retort upon his objector, "You, at least, who have stated what is untrue, or have concealed the truth, for the purpose of drawing me into a contract, cannot accuse me of want of caution because I relied implicitly upon your fairness and honesty." The same principle was announced in the same case by Lord Cranworth. L. R. 2 H. L. 121. See, also, Mead v. Bunn, 32 N. Y. 275, 280; McClellan v. Scott, 24 Wis. 81, 87. There seems to be some difference in opinion, however, on the point whether as respects creditors the purchaser of shares is not bound to take notice of the provisions of the articles of association. Oakes v. Turquand, supra; Reese River Silver Min. Co. v. Smith, L. R. 4 H. L. 64, 72; Downes v. Ship, L. R. 3 H. L. 343.

Considering that the transaction between the defendant and the company's agent set up in the plea took place in a state different from that in which the company was organized, and that its charter was on file in the auditor's office in Illinois, it is our opinion that it would be possible for the agent of the company to make fraudulent representations concerning the laws of Illinois and the charter of the company, and that if he did represent that, by those laws and the charter, eighty per cent. of the stock was "nonassessable," and the defendant relied upon this, he is entitled, in the absence of laches and acquiescence, as against the company, to resist payment of this eighty per cent. In this connection, it may be mentioned, that it is the duty of a person who has been fraudulently drawn into the purchase of shares to take prompt measures on discovering the fraud, to repudiate or rescind the contract. And the reason for this is two-fold: (1) Because his remaining in the company may mislead others into becoming members of it upon the credit of his name, when otherwise they would not do so. (2) Because it may likewise induce others to deal with it and give credit to it for the same reason. Directors, etc., of Central Ry. of Venezuela v. Kisch, supra; Bwlch-Y- Plwm Lead Min. Co. v. Baynes, L. R. 2 Exch. 326; Ashley's Case, L. R. 9 Eq. 263; Scholey v. Central Ry. Co. of Venezuela (bill by shareholders against company), Id. 267, note, decided by Lord Chancellor Cairns. In the case last cited the lord chancellor said: "He certainly thought that the court would be most careful to see, in a company going on and trading, in which the rights of shareholders and others varied from day to day, that a person coming to complain of misrepresentations of this kind, and coming to avoid a voidable contract came within the shortest limit of time which was fairly possible in such a case." It results from the foregoing considerations that if this were an action by the company for calls, or a suit by the defendant against the company to rescind the contract for the purchase of stock, and the facts were as set out in the answer, the law would be with the present defendant, provided it appeared that he had been guilty of no laches in discovering the fraud, and thereupon promptly repudiated the contract. How the contract may be repudiated or disaffirmed, see Bwlch-Y- Plwm Lead Min. Co. v. Baynes (sufficiency of plea), L. R. 2 Exch. 324; Ashley's Case, L. R. 9 Eq. 263; McNiell's Case, L. R. 10 Eq. 503; observations of Lord Chancellor Hatherley in Smith's Case, L. R. 4 H. L. 64, on page 73; Lord Westbury in same case, pages 77, 78; Lord Cairns, Id., page 70; same case below, 2 Ch. App. 604; Oakes v. Turquand, supra, and cases cited infra.

It remains to consider how far the foregoing principles are modified when the company has failed or become bankrupt and the rights of creditors, in addition to those of shareholders, are involved. As respects creditors "the stockholders are special partners, incorporated to carry on the business of the company, and the stock subscribed and secured by the several stockholders or partners constitutes the capital or fund publicly pledged to all who deal with them," and the stockholders are debtors to the company for their unpaid stock. Ogilvie v. Knox Ins. Co., 22 How. [63 U. S.] 380, 387.

Assuming this to be, as it unquestionably is, a correct view of the relation of stock-

holders to the company and to the public, the argument is made on behalf of the defendant, that if he was induced by the fraud of the company to agree to purchase its stock, he does not thereby become a stockholder, because an agreement obtained by fraud is void, and the person so injured has a right to repudiate it and treat it as utterly invalid from the beginning, as regards the company, and that the company's creditors have in this respect no higher right than the company itself. In other words, if the company has no right to collect the subscription or purchase money, for the shares, its creditors, who are not creditors of the subscriber to the stock or the shareholder, must claim through it and can stand on no better ground, and the right of the assignee in bankruptcy as the representative of creditors is simply the right to collect the assets of the company, and if the person claimed to be a stockholder is not by reason of fraud entitled to be held as such by the company, this answers any possible right of the assignee to a recovery. But the proposition is not a sound one, that the right of a person who has been drawn into the purchase of stock by the fraud of a company or its agents to relief is as against creditors as it would be against the company. If the contest is with the company, it is essentially one with the alleged shareholder's own partners or associates, and if their corporate representative or its agents have practised a fraud upon him, he is entitled to relief against it. But if a person has accepted a certificate of stock and becomes, to all external appearance, a stockholder, persons may have become creditors of the company on the faith of his membership and in law are presumed to do so, and as they cannot know the manner in which he was induced to become a stockholder, there is ground to maintain that as to them the manner is immaterial.

Upon consideration of the adjudged cases, and upon principle, our judgment is that a contract to purchase shares induced by fraudulent representations or concealment is not void, but only voidable, which means, as the house of lords has decided, that it is valid until disaffirmed, and not that it is void until affirmed. Oakes v. Turquand, supra; Reese River Silver Min. Co. v. Smith, L. R. 4 H. L. 64; same case below, 2 Ch. App. 604.

This doctrine, it will be seen, gives to the purchaser of shares, though his purchase was induced by fraud, the right to hold on to them if it should be profitable to do so; and as the rights of creditors may become involved, who can ordinarily know nothing of the fraud practised upon the shareholder, the law as a condition of relief to the latter requires that he shall be guilty of no laches in discovering the fraud and in repudiating the purchase.

Speaking of this subject, Lord Romilly, in Ashley's Case, above cited, after referring to the course of decision, says: "The leading principle in all these cases is this: A man must not play fast and loose; he must not say 'I will abide by the company if successful, and I will leave the company if it fails;' and therefore when a misrepresentation is made of which any one of the shareholders has notice, and can take advantage to avoid his contract with the company, it is his duty to determine at once whether he will depart from the company or whether he will remain a member." L. R. 9 Eq. 263, 268; McNeill's Case (1870) L. R. 10 Eq. 503.

Under the English companies' act of 1862, though there has been such fraud as will enable a subscriber to defend against calls and though he has repudiated the contract within a reasonable time, yet there seems to be a tendency to hold that he is liable to creditors if he has not taken active steps to have his name removed from the register of shareholders before proceedings are taken to wind up the company for insolvency. Oakes v. Turquand, supra; explained and principles applied, Reese River Silver Min. Co. v. Smith (1869) L. R. 4 H. L. 64; In re Aetna Ins. Co., Ir. R. 6 Eq. 298; and see McNeill's Case, L. R. 10 Eq. 503; Henderson v. Royal British Bank, 7 El. & Bl. 356; compare McNeill's Case, L. R. 10 Eq. 503.

These decisions are doubtless in some degree influenced by the special provisions of the companies' act, particularly that of 1862, but the general course of reasoning therein is applicable to cases of insolvent or bankrupt corporations in this country. There is no register of stockholders in Illinois provided for, and it is possible that the decisions in England requiring active steps by bill in chancery to have one's name removed from the register might not be applicable in their full extent here. Indeed, I am inclined to the opinion that if a company has fraudulently misrepresented or concealed material facts and thus drawn an innocent person into the purchase of stock, he at the time being guilty of no want of reasonable caution and judgment, and afterwards guilty of no laches in discovering the fraud, and he thereupon without delay notifies the company that he repudiates the contract and offers to rescind the purchase, these facts concurring, I am inclined to the opinion that the bankruptcy of the company subsequently happening will not enable the assignee to insist that the purchase of stock is binding upon him. But it is not necessary as the plea stands to rule the point. McNeill's Case, L. R. 10 Eq. 503, and cases supra. The plea is defective in that it does not show that the defendant made use of reasonable diligence to make himself acquainted with the matters of fact in respect of which the fraud is claimed, nor when or how he repudiated the contract, nor wheth-

er he offered to surrender the certificate of stock promptly on discovering the fraud.

For these reasons the demurrer to the second special defense or plea is sustained. Demurrer sustained.

NOTE. See and compare Upton v. Triblecock [91 U. S. 45], decided by the supreme court, October term, 1875, where this subject, in the general aspect discussed in the foregoing opinion, is considered. Farrar v. Walker, decided by Miller, Circuit Justice, on appeal, September, 1875, relates to this subject, and is reported from short-hand notes, taken at the time. [See Case No. 4,679.]