## STUFFLEBEAM v. DE LASHMUTT.

(Circuit Court, D. Oregon. November 18, 1897.)

No. 2,409.

1. NATIONAL BANKS — LIABILITY OF STOCKHOLDER — PURCHASE INDUCED BY FRAUD.

One who is induced by fraud to purchase stock of an insolvent national bank, and have it transferred to him on the books of the bank, and who, upon discovery of the fraud, takes prompt action to rescind the contract, is not liable to assessment on such stock, except on behalf of persons who extended credit to the bank, after the transfer, without knowledge of the fraud.

2. APPARENT STOCKHOLDER—GROUND OF LIABILITY—ESTOPPEL.

The binding character of the obligation of one whose name appears as a stockholder on the books of a corporation is on the principle of estoppel,

which precludes him from denying a relation he has assumed, and upon the strength of which others have acted.

W. H. Effinger, for plaintiff.
E. B. Williams, for defendant.

BELLINGER, District Judge.    This is a demurrer to the separate answer of De Lashmutt to the complaint in an action brought to recover an assessment upon national bank stock held by defendant, on the ground that the facts alleged do not constitute a defense to the cause of action set out in the complaint.    The separate answer alleges, in effect:    That defendant was induced by false representations, fraudulently made, as to the condition of the National Bank of Moscow, by Brown, the president of the bank, and Brune, its cashier, to convey land of the value of $15,000 to Brown in consideration of the transfer to defendant of stock in the bank of the par value of $12,500.    That about 20 days thereafter said bank was closed by the officers of the United States government, and the bank taken in charge by them.    That then, for the first time, the defendant became apprised of the condition of the affairs of such bank, and of the fraud practiced upon him.    That he then learned that said bank was insolvent at the time the stock was assigned to defendant.    That the stock at that time was valueless, and the holders thereof were, moreover, liable to be called upon for assessments to pay creditors.    That, as soon as this condition of the affairs was made known to defendant, he rescinded the contract he had made with Brown, and called upon him to reconvey the land taken by him; and defendant tendered the stock, duly assigned, to Brown.    That Brown refused to accept such tender, or make reconveyance, as demanded.    That immediately thereupon, and prior to the assessment sued on, defendant brought a suit against Brown to rescind such contract, and reconvey the land so fraudulently, as alleged, procured to be conveyed by Brown and Brune.    The plaintiff contends that the liability of defendant is absolute; that it follows the legal ownership of the stock in his hands, regardless of any right in defendant to have the contract by which he took such title canceled.

It is held in numerous cases—and there is nothing to the contrary —that a subscriber who is induced to subscribe for stock in a corporation by fraudulent representations may set up such fraudulent representations by way of defense in an action to recover the purchase price of the stock so taken.    Bank v. Peck, 29 Conn. 384.    And a receiver has only the right existing in the corporation at the time of his appointment.    The case mainly relied upon in support of the demurrer is that of Pauly v. Trust Co., 165 U. S. 606, 17 Sup. Ct. 465.    This case holds that if the owner of stock transfers his shares to another as collateral security for a debt due to the latter from such owner, and if, by the direction or with the knowledge of the pledgee, the shares are placed on the books of the association in such way as to imply that the pledgee is the real owner, then the pledgee may be treated as a shareholder, within the meaning of section 5151 of the Revised Statutes of the United States, and therefore liable, upon the basis prescribed by that section, for the con-

tracts, debts, and engagements of the association. The court, in its opinion, says:

"It is true that one who does not in fact invest his money in such shares, but who, although receiving them simply as collateral security for debts or obligations, holds himself out on the books of the association as true owner, may be treated as the owner, and therefore liable to assessment, when the association becomes insolvent and goes into the hands of a receiver. But this is upon the ground that, by allowing his name to appear upon the stock list as owner, he represents that he is such owner; and he will not be permitted, after the bank fails, and when an assessment is made, to assume any other position, as against creditors. If, as between creditors and the person assessed, the latter is not held bound by that representation, the list of shareholders required to be kept for the inspection of creditors and others would lose most of its value."

And the court, in its opinion, further says:

"But this rule can have no just application when, as in this case, the creditors were informed by that list that the party to whom certificates were issued was not in fact, and did not assume to be, the owner of the shares represented by them, but was, and assumed to be, only a pledgee, having no general property in the thing pledged, but only a right, upon default, to sell in satisfaction of the pledgor's obligation. * * * As already indicated, those may be treated as shareholders, within the meaning of section 5151, who are the real owners of the stock, or who hold themselves out, or allow themselves to be held out, as owners in such way and under such circumstances as, upon principles of fair dealing, will estop them, as against creditors, from claiming that they were not in fact owners."

The liability thus held to exist is, as will be seen, upon the principle of an estoppel, by which a person who has held himself out as a stockholder of a corporation will not be allowed to escape the liability that attaches to him in that relation, as against persons who dealt with the corporation upon the strength of his relation to it as a shareholder.

In Waite v. Dowley, 94 U. S. 527, the court says that the act of congress "was merely designed to furnish to the public dealing with the bank a knowledge of the names of its corporators, and to what extent they might be relied on as giving safety to dealing with the bank." Many of the cases use the expression, with reference to the conduct of persons sought to be held as stockholders, "holding themselves out" as stockholders. If in this case any creditor for the payment of whose debt the assessment sued on was levied, had become a creditor after the transfer to De Lashmutt of the shares of stock upon which he is sought to be held, the principles of the case of Pauly v. Trust Co. would apply. In such case it must be said that the creditor acted upon the representation that De Lashmutt was a stockholder, in extending his credit to the corporation; and in that case, whatever equities there might be as between De Lashmutt and the persons from whom he took the stock, these would not avail the defendant as against the innocent creditor, who dealt with the corporation without knowledge of these equities. Consider the reason for the liability that attaches to the stockholder whose name appears upon the books of the company as such. What efficacy is there in the fact of the name of the stockholder being upon the books of the company to bind him? The reason of the obligation is apparent. It is in the fact that this appearance of the books of the corporation operates as an inducement to

persons to deal with the corporation. There is no mystery in the binding character of the obligation which the stockholder assumes whose name appears upon the books of the company. The obligation is because of the principle of estoppel, by which one is precluded from denying a relation which he has assumed, and upon the strength of which others have acted. If no one has acted upon this representation; if the contract is repudiated with promptness, and before an assessment or other attempt to enforce the liability is made, —there is no reason in law or in morals why the party should be bound as a stockholder. In this case the facts, as disclosed by the separate defense, show that De Lashmutt acted with promptness upon discovering the fraud that had been perpetrated on him, in proceeding to disaffirm the contract under which he took the stock, and he brought his suit to cancel that contract and recover back the consideration paid by him before this assessment was made; and it is not claimed that any debt of the corporation was created between the time of the transfer and the levying of the assessment, so that, so far as the creditors of the bank are concerned, they have not been affected by the transfer to the defendant. No one has been prejudiced by what has been done. The rights of all persons interested in the assessment made are precisely what they would have been had there been no transfer of stock by Brown to the defendant. Under these circumstances, upon what principle of justice, or of law, which is the embodiment of justice, can De Lashmutt be held to a liability on account of the fraud by which he was induced to give up a valuable property for certificates of stock, which were not only worthless at the time, but which carried with them a large liability in favor of existing creditors? The case is not different from those cases where the action has been brought to recover the consideration agreed to be paid by the transferee for the stock taken by him. In those cases the action has been brought either by the corporation itself, or by the receiver acting for the creditors of the corporation. In this case the receiver has no greater right than the corporation would have, suing in its own right. The demurrer is overruled.