## LANTRY v. WALLACE.

(Circuit Court of Appeals, Eighth Circuit. October 30, 1899.)

No. 1,221.

1. NATIONAL BANKS—LIABILITY OF STOCKHOLDER TO ASSESSMENT ON INSOLVENCY—DEFENSES.

The liability of a stockholder of a national bank to assessment on the bank's insolvency is one created by statute, for the sole benefit of creditors; and one who becomes and remains a stockholder for a considerable length of time while the bank is engaged in business, and until it is declared insolvent, cannot avoid such liability on the ground that this subscription was induced by fraud which would entitle him to a rescission as between himself and the corporation, unless it is affirmatively shown that there are no creditors who became such while he was a registered stockholder.

2. SAME.

The fact that a national bank purchased shares of its own stock ultra vires does not render its subsequent sale of such stock to another unlawful, or the stock void in the hands of the purchaser; nor does it constitute any defense to an action by a receiver of the bank against such purchaser to recover an assessment made after the bank's insolvency.

3. SAME—ACTION TO RECOVER ASSESSMENT—COUNTERCLAIM.

In an action by the receiver of a national bank against a stockholder to recover an assessment, the defendant cannot set up, by way of counterclaim, a claim for damages against the bank for fraudulent representations made to induce his purchase of the stock.

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Kansas.

This suit was brought by Theoderic B. Wallace, as receiver of the Missouri National Bank of Kansas City, Mo., the defendant in error, against Charles J. Lantry, the plaintiff in error, to recover an assessment, in the sum of $20,-000, which had been theretofore duly assessed by the comptroller of the currency against said Lantry as the owner of 200 shares of stock in the Missouri National Bank of Kansas City, Mo., which had previously become insolvent. The complaint was in the usual form, and alleged that said bank was duly incorporated under the act of congress of the United States relative to national banks; that it had become insolvent; that Theoderic B. Wallace was duly appointed receiver of said bank by the comptroller of the currency on December 3, 1896; that an assessment of $100 per share had been made by the comptroller of the currency on July 30, 1897; that the defendant Lantry was the owner of 200 shares of the stock of said bank; and that by virtue of the aforesaid assessment he was obligated to pay to the receiver the sum of $20,000, with interest at the rate of 6 per cent. per annum from August 30, 1897. The defendant below filed an answer containing two defenses, separately stated, and a counterclaim. In the first defense it was alleged, in substance, that the defendant on April 18, 1896, purchased 200 shares of stock in the aforesaid bank, and received a certificate therefor; that the stock so purchased was represented by D. V. Rieger, the president of the bank, to be the property of the bank at the time of the sale, which the bank had theretofore lawfully acquired; that he was induced to make the purchase by certain false and fraudulent representations which were made by said president and other officers of the bank concerning its financial condition, which false representations were set out at great length in the answer; that the stock was held by the defendant from the date of its purchase on April 18, 1896, until December 3, 1896, when a receiver of the bank was appointed on account of its insolvency; that after the appointment of a receiver that officer had exclusive control of all the books, papers, and assets of the bank, and repeatedly assured the defendant when he applied for information that the bank was solvent, and would pay all of its debts

97 F.—55

and liabilities without recourse against the stockholders; that the defendant was lulled into security by such statements of the receiver, and by reason thereof did not gain access to the books and papers of the bank until on or about September 1, 1897, at which time he was given access to the books and records of the bank by direction of the comptroller of the currency; that thereafter he discovered the falsity of all of the statements and representations on the faith of which he had been induced originally to purchase the aforesaid stock, and that he thereupon, on or about October 27, 1897, called at the prior place of business of said bank, and there tendered to the receiver, who was in charge of said bank, the certificate for the 200 shares of stock which he had received, and demanded of said receiver that he should repay to him the sum of $20,000 which he had paid for said stock, or such proportionate part thereof as he would be entitled to receive as a creditor of the bank for that sum. For a second defense the defendant repeated all of the averments which were contained in his first plea, and in addition thereto he averred, in substance, that the president and cashier of the Missouri National Bank of Kansas City had acquired the stock which was eventually sold to him in the following manner, that is to say: That they had purchased the stock with the funds of the bank from other shareholders when the bank was insolvent, to prevent such other shareholders from throwing the stock on the market at ruinous prices, and thereby disclosing to the public the true condition of the bank; that the stock, when so purchased with the funds of the bank, had been transferred to clerks and other agents of the bank, to conceal the character of the purchase; that such pretended purchasers had then given notes to the bank representing the amount of money that had been expended by the bank to acquire the stock; that the persons who thus gave notes to the bank representing the money that it had so expended were totally insolvent, and never intended to pay their said notes; that all of these facts were concealed from the defendant until long after his purchase of the 200 shares of stock in question; and that the stock so as aforesaid sold to him was a part of certain stock, amounting at its par value to $80,000, which the bank had so unlawfully acquired, whereas at the date of his said purchase, and long afterwards, he believed it to be stock that the bank had lawfully acquired, and had a good right to sell. The counterclaim which the defendant interposed was in the nature of a cross action against the Missouri National Bank to recover the damages which the defendant had sustained by reason of the fraudulent representations that had been made by its officers to induce the sale of the aforesaid stock, and such damages were pleaded as an offset against the comptroller's assessment. These defenses were adjudged insufficient on demurrer (C. C.; 89 Fed. 11, 1023), whereupon a judgment by default was rendered against the defendant below in the sum of $21,550; he having declined to plead further. The writ of error which was sued out by the defendant below presents the question whether the demurrer to the answer was properly sustained.

C. N. Sterry (Eugene Hagan and I. E. Lambert, on the brief), for plaintiff in error.

William C. Cochran (J. McD. Trimble and W. H. Wallace, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

While the defendant's answer is unusually lengthy, and contains many allegations showing that he was grossly deceived as to the financial condition of the Missouri National Bank by the false and deceitful statements of its officers when he was induced to become a purchaser of its stock, and that he was not guilty of negligence up to the time the bank failed, in failing to discover that he had been defrauded, yet, when the answer is carefully analyzed, it is manifest

that the defendant seeks to escape from the assessment on two principal grounds: First, on the ground that he has lawfully rescinded the contract by which he purchased the stock, and reinvested the bank with the title thereto; and, second, on the ground that he never became the owner of any stock in the bank, because the bank had wrongfully acquired it from other shareholders when it was in an insolvent condition.

It will be observed from the foregoing statement that the answer shows that the defendant became a registered shareholder of the insolvent bank on April 18, 1896, when it was a going concern, and that he remained such until it was placed in liquidation by the comptroller about eight months thereafter, to wit, on December 3, 1896. From the very nature of the business in which banks are engaged, it must be presumed that between the last-mentioned dates the Missouri National Bank incurred large obligations to depositors and to other creditors. Besides, the answer alleges, among other things, that one of the reasons which was assigned by the officers of the bank for soliciting the defendant to become a stockholder therein was that he was a man of large means, with an extensive acquaintance in Kansas, whose connection with the bank would attract to it a large amount of patronage from that state. It must be assumed, therefore, that there are many creditors of the insolvent bank, who are now represented by the receiver, who became such subsequent to April 18, 1896; and it is probably true that there are some persons who became creditors of the concern because of the defendant's connection therewith as a large stockholder. It is immaterial, however, to the present discussion, whether the answer does or does not show that certain persons became creditors of the bank after April 18, 1896, in reliance on the fact that the defendant had become one of its shareholders, since the creditors of a bankrupt company are entitled to nothing less than its whole outstanding capital stock as a fund for the payment of their claims, and because all persons are, in law, presumed to extend credit to corporations, and especially to national banks, whose shares are subject to a double assessment, in reliance upon the amount of their issued capital stock, although they do not know accurately by whom such stock is at the time held. Moreover, a creditor of a corporation, when he becomes such, is under no obligation to ascertain what representations, if any, may have been made to the stockholders of the company to induce them to become such. Pauly v. Trust Co., 165 U. S. 606, 611, 17 Sup. Ct. 465, 41 L. Ed. 844; Upton v. Englehart, 3 Dill. 496, 504, Fed. Cas. No. 16,800. These considerations lead to the conclusion that, within the rule which was enunciated by this court in two recent cases (Scott v. Latimer, 60 U. S. App. 720, 33 C. C. A. 1, 89 Fed. 843, and Bank v. Newbegin, 40 U. S. App. 1, 20 C. C. A. 339, 74 Fed. 135, 33 L. Ed. 727), the defendant's effort to rescind the purchase of the stock in question was wholly ineffectual, and cannot be permitted to release him from the assessment which was made by the comptroller of the currency, so far as the creditors of the insolvent bank are concerned. In the Latimer Case it was decided, in substance, that the receiver of

an insolvent bank, in suits of this character, is armed with all the rights of creditors, which are very different from those of the corporation itself; that the liability of the stockholders of national banks to an assessment, in case of corporate insolvency, is a liability created by statute for the sole benefit of creditors; that the liability does not grow out of any contract between the corporation and its shareholders; and that, in the very nature of things, it is a liability which cannot be released or discharged by any agreement between the corporation and its shareholders. It was also held in that case that even though a stockholder has been induced to become such through fraud which would render his purchase or subscription voidable as between himself and the corporation, or as between himself and the party from whom he acquired his stock, yet, if he has knowingly permitted himself to be registered upon the books of the corporation as a shareholder prior to its insolvency, and has remained such for any considerable length of time, and until insolvency supervened, he cannot then be permitted to rescind his purchase or subscription, so far as the corporate creditors are concerned. In the Newbegin Case this court recognized the right of the shareholder, who was then seeking a rescission of his subscription on the ground of fraud, to rescind, under the peculiar facts of that case, inasmuch as it appeared that all the creditors of the bank who were entitled to object to the rescission had been paid, or had waived their right to object to the rescission; but in that case it was distinctly held that the right to rescind a subscription for stock should be denied to a stockholder who is registered as such when insolvency happens, if he has been a stockholder for any considerable period, or if debts remain unpaid which have been contracted since his subscription or purchase was made. It results, therefore, from the previous decisions of this court to which we have referred, that the first defense which was pleaded by the defendant in his answer was without merit, and that the demurrer thereto was properly sustained.

In considering the second defense which was interposed by the defendant, it is important to bear in mind that the 200 shares of stock which he purchased from the bank was not void stock, but was stock which, according to the averments of the answer, had once been issued to other persons, and had been reacquired by the bank by purchasing it from such other persons to prevent them from throwing it on the market at ruinous prices. It is necessary to infer from the averments of the answer that this stock had once passed the scrutiny of the comptroller, and had been outstanding and had been held by other persons since the organization of the bank in the year 1891. The purchase of this stock by the bank, under the circumstances disclosed by the answer, was doubtless ultra vires, but the purchase in question did not render the stock void. In purchasing it the bank made an unlawful use of its funds, for which the officers concerned in the transaction could have been held responsible, as for any other unlawful act, if the corporation had sustained damage; but, in point of fact, by the sale of the stock to the defendant that portion of its capital which had been dissi-

pated by the purchase was restored by the resale, and no loss seems to have been incurred. We are at a loss to understand how this transaction on the part of the bank can operate to relieve the defendant from his liability as a stockholder in a suit brought by the receiver to recover a stock assessment which was levied solely for the benefit of corporate creditors. The sale of the stock to the defendant after the bank had purchased the same was not unlawful, since it operated to restore that part of the capital that had been retired, and to that extent repaired the wrong which might otherwise have been done to the bank's creditors. Bank v. Stewart, 107 U. S. 676, 678, 2 Sup. Ct. 778, 27 L. Ed. 592. In the case last cited it was also decided that if a national bank wrongfully acquires its own stock, as by making a loan thereon, no one but the government can be heard to complain after the contract has been fully executed; and in the case at bar the purchase of the stock was fully consummated, and was no longer executory, when the sale was made to the defendant. Inasmuch, then, as the stock was not void, and the sale of the same to the defendant was not prohibited by law, we are of opinion that the defendant has no greater right to shield himself from his statutory liability to creditors because of the wrongful conduct of the bank in purchasing the stock from other shareholders, than he has to shield himself from liability because his purchase of the stock was induced by the fraudulent representations of the bank's officers. The creditors of the bank, who must be presumed to have extended credit on the security afforded by the capital stock and the statutory liability incident thereto, cannot be deprived of such security, either by the fact that the defendant was fraudulently induced to become a shareholder, or by the further fact that the bank had wrongfully acquired the stock which it subsequently sold to him, when it appears that he knowingly became a registered shareholder, and remained such for eight months, and until insolvency supervened, and in the meantime enjoyed all the rights and privileges incident to that relation. The equity of the corporate creditors under such circumstances is superior to that of the stockholder, and the latter cannot obtain a rescission of the fraudulent contract for the sale of the stock which would operate to the prejudice of the bank's depositors and other creditors. The second defense pleaded in the answer was therefore untenable.

Concerning the counterclaim which was pleaded by the defendant, it is only necessary to observe that the same reasons which prevent the defendant from rescinding the contract for the purchase of the stock, and thereby depleting the statutory fund for the benefit of the creditors which was created by the comptroller's assessment, will likewise prevent him from offsetting against the assessment the damages incident to the fraud and deceit of the bank. That is a claim against the bank alone, growing out of the wrongful conduct of its officers, for which the corporate creditors are in no wise responsible; and, according to well-established rules, such a demand cannot be interposed as a counterclaim in a suit where the receiver sues merely as the representative of creditors, for the enforcement of a

stock liability which was created by the statute solely for their benefit, and cannot be enforced by the bank, under any circumstances, in a suit brought in its own name. In proceedings to liquidate the affairs of insolvent corporations, where stockholders are called upon to pay amounts that remain unpaid on the capital stock, it is invariably held that such stockholders will not be permitted to set off debts due to themselves from the corporation against stock assessments, and thereby secure an advantage or preference over other creditors. Sawyer v. Hoag, 17 Wall. 610, 21 L. Ed. 731; Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. 530, 35 L. Ed. 227; Scammon v. Kimball, 92 U. S. 362, 23 L. Ed. 483. It is obvious, therefore, that the counterclaim should be rejected, since the effort is to offset the bank's liability for an injury done to the defendant by the fraud and deceit of its officers against a demand which does not, and never did, exist in favor of the bank, but was created solely for the benefit of the bank's creditors. It is questionable, to say the least, whether a judgment recovered against the bank for the alleged fraud and deceit could be permitted to participate in the distribution of the fund created by the stock assessment until all contract obligations of the bank have been fully paid; but, be this as it may, we are satisfied that the cross demand in question cannot be entertained in the present action. It results from what has been said that the demurrer to the defendant's answer was properly sustained, and the judgment below is therefore affirmed.

SANBORN, Circuit Judge. I dissent from the conclusion reached and the views expressed in the foregoing opinion, for the reasons stated in my dissenting opinion in Scott v. Latimer, 89 Fed. 843, 857–862, 33 C. C. A. 1, 15–20, 60 U. S. App. 720, 743–751.