STUFFLEBEAM v. DE LASHMUTT.

(Circuit Court. D. Oregon. April 27, 1900.)

No. 2,409.

1. NATIONAL BANKS—LIABILITY OF STOCKHOLDERS FOR ASSESSMENT ON INSOLVENCY—RIGHT TO RESCIND SUBSCRIPTION.

In exceptional cases, where there is no ground for an inference that credit was extended to a national bank on the faith of the ownership of stock by a defendant, he should be permitted to rescind his agreement of subscription after insolvency of the bank, where it was induced by fraud, as well when there are creditors as when there are none. There should be no presumption of law to overcome the fact capable of proof in such a case.

. **2. SAME—SUIT TO RECOVER ASSESSMENT—DEFENSES.**
　　Defendant, sued by the receiver of an insolvent national bank for an assessment as a stockholder, was induced to purchase the stock held by him at the time the bank was closed from the president of the bank by the fraudulent representations of the president and cashier. Such fraud ,had been established in a suit for rescission of the contract; brought by defendant in a state court, to which the receiver was a party. The bank was in fact insolvent when the purchase was made, and was closed by the comptroller within 36 days thereafter. The defendant lived several hundred miles from the place where the bank was located, and took no part in its affairs. *Held*, that an answer setting up such facts as a defense was not demurrable. ·
· **3. SAME.**
　　While, in such case, the decree of the state court rescinding the contract could not be pleaded as a bar, the question of defendant's liability as a stockholder to creditors of the bank not having been in issue, such decree was conclusive as between the receiver and the defendant as to the question of fraud in defendant's purchase, and for that purpose might properly be pleaded by defendant. ·

This is an action at law by the receiver of a national bank to recover an assessment from defendant as a stockholder. On demurrer to amended answer.

Wm. H. Effinger, for plaintiff.
· R. & E. B. Williams, for defendant.

BELLINGER, District Judge. This is a demurrer to two separate defenses in the amended answer to the complaint of the receiver in an action brought to recover an assessment upon national bank stock held by the defendant. The defense in the original answer was that the defendant was induced by the fraudulent representations of one Browne, president of the bank, and Brune, its secretary, to purchase shares in the bank belonging to Browne. It appears from the allegations of the answer that Browne and. Brune made various fraudulent representations in respect to the condition of the bank, to the effect that the bank was in a solvent condition, and that it had assets above its liabilities; that its surplus capital amounted to $30,000; that the capital stock of said bank was worth 20 per cent. over and above its face value; that it was not indebted to any one except regular depositors and $10,000 loaned money; that it had loans and discounts that were good and collectible, amounting to above $122,000; that it owned stocks and securities of the reasonable value of above $15,000, and that there was due the bank from solvent state banks and bankers more than $8,000; that the bank had sufficient assets to pay all of its liabilities of every kind and nature, and both its time and stock deposits, and then leave over and above after such payments cash sufficient to pay all the capital stock of the bank and 40 per cent. premium thereon; and it was further represented that the bank was doing a lawful business, and had complied with the laws of the United States and the state of Idaho, and had good credit and standing. It was alleged that these representations were made for the purpose of deceiving and defrauding the defendant out of a certain tract of land owned by him and situated in the state of Oregon, which land, it was proposed, should be exchanged for the stock in question, and was thereafter so exchanged, and a conveyance therefor

executed to said Browne, who subsequently conveyed to Brune. All these representations are alleged to have been false and fraudulent, and the facts showing the false and fraudulent character thereof are set forth in the answer. A demurrer to this original answer was overruled by the court upon the ground that the liability of the defendant, if any, upon the facts as alleged, was upon the principle of an estoppel, and that there could be no recovery, under such circumstances, unless it appeared, or there was ground for the presumption, that creditors for the payment of whose debt the assessment sued on was levied had become such after the transfer to the defendant of the stock upon which he is sought to be charged. 83 Fed. 449. In the amended answer, in addition to the matters hereinbefore recited, the defendant pleads a decree in his favor in the circuit court of the state of Oregon, for the county of Washington, in the suit of himself and Inez De Lashmutt against Browne and the receiver, brought to rescind the contract of subscription and to compel a reconveyance of the land transferred to Browne as the purchase price of the stock in question. Plaintiff demurs, as before, to the defense that the defendant was induced by the fraudulent contrivances of Browne and Brune to become a stockholder in the Moscow Bank, and also to that part of the answer which sets up the suit and decree in the state court.

It is held that contracts by which a party becomes a stockholder under circumstances such as are set forth in this complaint are not void, but voidable. Upon that doctrine the defendant became a stockholder in the Moscow Bank, and was such at the time the receiver took charge; and, under the rule adopted in some of the cases, the utmost diligence in rescinding the voidable contract will not relieve the unfortunate stockholder if he does not discover the fraud practiced upon him until after proceedings are begun to liquidate the bank's affairs, and if any "considerable amount of corporate indebtedness" has been created in the meantime. Bank v. Newbegin, 20 C. C. A. 339, 74 Fed. 140, 33 L. R. A. 727. And so in the earlier case of Upton v. Englehart, 3 Dill. 496, Fed. Cas. No. 16,800, it is said that, "if a person has accepted a certificate of stock, and become, to all external appearances, a stockholder, persons may have become creditors of the company on the faith of his membership, and in law are presumed to do so; and, as they cannot know the manner in which he was induced to become a stockholder, there is ground to maintain that as to them the manner is immaterial." In a recent case, where a stockholder in a national bank sought to avoid liability on the ground that his subscription was induced by fraud, the court says that it is immaterial whether there were creditors of the bank who became such in reliance on the fact that the defendant had become one of its shareholders, since the creditors of a bankrupt company "are entitled to nothing less than its whole outstanding capital stock as a fund for the payment of their claims, and because all persons are in law presumed to extend credit to corporations, and especially to national banks, whose shares are subject to a double assessment, in reliance upon the amount of their issued capital stock, although

they do not know accurately by whom such stock is at the time held." Lantry v. Wallace, 38 C. C. A. 510, 97 Fed. 869. If, as stated in the last case cited, it is immaterial whether there were creditors of the bank who became such in reliance on the fact that the defendant had become one of its shareholders, because of a presumptions that all persons extend credit in reliance upon the amount of the issued capital stock of the bank, although they do not know accurately by whom such stock is at the time held, then it is immaterial whether the defendant has acted before or after insolvency proceedings have been begun, or has acted with diligence in repudiating the contract by which his stock was procured, or by assuming the external appearance of a stockholder has possibly led persons to become creditors of the company on the faith of the defendant's membership; these being conditions of liability as laid down in the case of Upton v. Englehart. And yet in all the cases involving the question of the liability to creditors of a stockholder who has been duped into that relation it is laid down as a condition to his relief that the shareholder "shall be guilty of no laches in discovering the fraud and repudiating the purchase." What advantage is there in the greatest possible diligence if the defendant in such a case is liable to creditors who do not know who the stockholders are; or if he is liable to creditors because their debts were created subsequent to the contract by which he acquired his stock, on the presumption of law that the credit so extended to the corporation was in reliance on the stockholder's ownership in the corporation; or if he is liable because he failed to discover the fraud practiced upon him until the company became insolvent, however impossible it may have been to have made the discovery sooner? Of course, if a defendant has played fast and loose, he forfeits his defense of fraudulent imposition as against creditors without reference to the time when their debts were created. But good faith and diligence are not always the same. Lack of diligence does not necessarily involve absence of good faith, and there is no sufficient reason for the importance that is given in all of the cases to the question of diligence in discovering the fraud and rescinding the contract founded upon it if an absolute liability results from the fact that the discovery was not made until after insolvency proceedings were begun, or from the fact that credit has been given the bank subsequent to the transfer of stock to the defendant. There can be no appreciable interval of time between the making of a contract by which shares are acquired and its rescission without credit being given in the ordinary course of business. If the company is a going concern, there will necessarily be such credit to cut off the luckless shareholder's right to relief from liability unless the contract is repudiated as soon as made. I do not think the courts have intended to lay down a rule that will, in effect, preclude relief from liability to creditors in all cases. Whatever unfavorable inferences may arise from the fact that the fraud complained of has not been discovered until after the company has gone into insolvency, it is not ground for a conclusive presumption of bad faith; and so of the credit that is given to the

company by those dealing with it in the interval between the taking of stock by a purchaser and his repudiation of the contract of purchase, it does not necessarily follow that such credit is upon the faith of the stock purchase. In the case of Bank v. Newbegin the opinion is expressed that, where the proof of fraud is clear, and the shareholder has been diligent in discovering it and in repudiating his contract, and no debts have been created in the meantime, a stockholder should be permitted to rescind his subscription as well after as before the company ceases to be a going concern, and, notwithstanding the rule adopted in the case that the creation of any considerable amount of corporate indebtedness subsequent to the subscription precludes the right to relief, the court refers to the exceptional facts in the case tending to show diligence, although the decision is not put upon that ground. In the case of Langtry v. Wallace it appeared from the answer that the defendant became a registered shareholder of the insolvent bank on April 18, 1896, when it was a going concern, and that he remained such until it was placed in liquidation by the comptroller, about eight months thereafter; that one of the reasons which were assigned by the officers of the bank for soliciting the defendant to become a stockholder, was that he was a man of large means, with an extensive acquaintance in Kansas, whose connection with the bank would attract to it a large amount of patronage from that state. Upon these facts the court concluded that it must be presumed, from the very nature of the business in which banks are engaged, that during the eight months that intervened between the date when the defendant was registered as a shareholder and the date when the bank was placed in liquidation the latter incurred large obligations to depositors and other creditors, and that probably some of these became creditors of the concern because of the defendant's connection with it as a stockholder.

I am of the opinion that in exceptional cases, where there is no room for an inference that credit has been given on the faith of the ownership of stock by a defendant, he should be permitted to rescind his agreement of subscription as well when there are creditors as when there are none; that there should be no presumption of law to overcome the fact capable of proof in such a case. My inclination is to follow in the way which seems to be pointed out by the cases cited, and yet, upon the facts so far appearing, this would probably result in great injustice to the defendant. There ought to be no failure of justice, much less an unjust judgment. It appears from the complaint that the defendant was imposed upon by the false representations made to him and contained in the official reports of the president and secretary of the bank as to the bank's condition. The defendant lived several hundred miles from the place where the bank was located. He took no part in its affairs, and had no means of information respecting it save through the officers who contrived the imposition practiced upon him. The bank was insolvent at the time of his purchase, and was closed by the comptroller of the treasury, so it is alleged, some 20 days thereafter (although it otherwise appears that some 36 days intervened between the defendant's pur-

chase and that event). The fact of the fraud has been judicially established in the state circuit court for this state in a suit to which the receiver of the bank was a party. I think that the inference is warranted that no one other than the defendant himself was in any way prejudiced by the defendant's purchase of stock. It is not a question as to which of two innocent persons shall suffer loss. So far as appears, there has been no loss attributable to this stock purchase, and the question is whether the creditors are to become the beneficiaries of the fraud complained of. If such a judgment is to be rendered here, it must be upon the mandate of a higher court. As to so much of the answer as sets up the decree in the state court, I am of the opinion that, while such decree is conclusive between the parties as to the fact of the fraud practiced upon the defendant by Browne in the transfer of the stock in question, it cannot be pleaded in bar of this action. Browne had conveyed to Brune, and the latter had in the meantime conveyed to his wife, M. T. Brune. Stufflebeam, the receiver of the bank, intervened in the suit, and filed his answer denying all the material allegations of the complaint, and thereupon he filed his cross bill against Browne and Brune, in which he set up the recovery of a judgment against them upon a debt due the bank, and the levy of an attachment upon the land in question. Upon this levy and judgment the receiver claimed a lien on the land, which he sought to have established and enforced in that suit. Pending these proceedings, Stufflebeam resigned the receivership, and Conoway was appointed receiver in his stead. Thereafter Browne and the two Brunes conveyed the land in dispute to Conoway, who thenceforth became the only party defendant in interest, and against whom the suit was prosecuted to final decree in favor of the De Lashmutts, plaintiffs therein. The fact that De Lashmutt had a right to rescind his contract with Browne, and compel a reconveyance of the land conveyed to the latter, does not determine the question of the former's liability to creditors as a stockholder. De Lashmutt's right to relief against Browne and Brune is one thing; his liability to the creditors of the bank another. In De Lashmutt's suit the receiver appeared to defend the lien of a judgment against Browne and Brune. He claimed through the latter. The question of De Lashmutt's liability as a stockholder was not, as a matter of relief, involved. Nothing was claimed on that account. I am of the opinion that such a question could not have been litigated in that suit. Browne and Brune had no interest in that question; nor had the plaintiff Inez De Lashmutt. The receiver could not have intervened for any such purpose. His only ground of intervention was the lien which he claimed upon the property which was the subject of that suit. That property was, in effect, impounded in that suit, and all persons claiming an interest in it must, of necessity, intervene to protect such interest. This was all that the receiver did, and the decree in favor of the plaintiffs was an adjudication against the lien claimed by the receiver. It is an adjudication conclusive upon the receiver as to the question of fraud, but no further; and, while it is not a separate defense, it is matter of defense, and for that purpose is properly pleaded. The demurrer is overruled.