FARMERS' STATE BANK OF MOBRIDGE, Appellant, v. EMPEY, Respondent.

(150 N. W. 936.)

(File No. 3596.   Opinion filed February 3, 1915.)

1.  **Banking—Stockholder—Rescission of Stock Purchase for Fraud—Liability to Corporate Creditors—Estoppel—Statute.**

   Under Laws 1909, Chap. 222, Art. 2, Sec. 41, concerning

liability of bank stockholders to bank creditors, and continuing
the liability for one year after stock transfer, as to the bank's
affairs at and prior to date of transfer, **held**, that where one
becomes a stockholder in a bank which is insolvent, in con-
sequence of frauds practiced upon her, she must look to the
wrongdoer for redress, and is estopped, as against the bank
creditors, to deny that she is a shareholder, and her liability
can not be changed by a subsequent rescission by her of the
contract of purchase of the stock, if she was a shareholder
when the bank became insolvent.

2.   Same—Stockholders—Liability to Creditors, Avoidance of, by
     Rescission of Stock Purchase—Burden of Proof—Estoppel.

The burden of proof is upon the party relying upon a rescis-
sion for fraud of a contract under which she purchased bank
stock, in order to escape her statutory liability to bank credi-
tors as such stockholder in an insolvent bank, to affirmatively
show that the equities are in her favor, and that there are no
creditors who became such while she was a registered stock-
holder; since, if any creditor became such, relying upon her
apparent ownership of stock, she is estopped from claiming
rescission.

3.   Same—Stockholder's Liability, Avoidance of—Rescission of Stock
     Purchase—Necessity of Actual Rescission.

Where defendant, seeking to evade statutory liability as
stockholder in an insolvent bank, on ground of fraud practiced
upon her in the purchase of the stock, has not, in a separate
suit, obtained judgment decreeing, against the vendor, a
rescission of the purchase contract, she must stand upon a
rescission actually consummated by her own acts prior to
bringing of the present action.

4.   Same—Stockholder's Statutory Liability to Creditors—Rescission
     of Stock Purchase, to Avoid Liability—Estoppel to Deny Re-
     scission.

In a suit against a stockholder of an insolvent bank, **held,**
that, in order to escape liability to creditors, on ground of
rescission of her contract of purchase of her shares, she must
show such rescission, and facts showing she is not estopped
from relying upon such rescission.

5.   Evidence—Liability of Stockholder—Corporate Liabilities After
     Stock Transfer—Testimony of Bank Cashier—Best Evidence of
     Deposits.

In a suit to enforce statutory liability of a stockholder of
an insolvent bank, who defends on ground of rescission of her
stock purchase for fraud, **held**, that it is reversible error to ad-
mit testimony of the bank cashier that no new deposits were
made after her said purchase; the bank books being the best
evidence.

**6.   Evidence—Rescission of Contract—Copy of Mailed Letter—Ability
to Produce Original—Best Evidence—Addressee Outside of
State, Notice to Produce, Quaere?**

Where defendant, to sustain her defense of rescission of a
purchase of stock of an insolvent bank, in a suit to enforce her
statutory liability as stockholder, was permitted to introduce
in evidence a copy of a letter shown to have been mailed to
an addressee outside of this state and presumed to have it in
possession, without proof that addressee was at time of trial
beyond this jurisdiction, **held**, that such ruling was error.   And,
in view of such letter's importance, **quaere** whether the rule,
laid down in 9 S. D. 61, that, where a paper is shown to have
been last in possession of one outside of state, notice to adverse
party to produce the paper is not necessary, to render secondary
evidence admissible, should apply in the present case.

Appeal from Circuit Court, 'Walworth County.   Hon. JOSEPH
H. BOTTUM, Judge.

Action by State Bank Examiner, in the name of the Far-
mers' State Bank of Mobridge, a corporation, against Catherine
B. Empey, to enforce defendant's statutory liability as stockholder
in said bank.   From a judgment for defendant, and from an order
denying a new trial, plaintiff appeals.   Reversed.

*Gardner & Churchill*, for Appellant.

No appearance on behalf of Respondent.

(1) Under point one of the opinion, Appellant cited:   Con-
stitution S. D., Art. 18, Sec. 3; Session Laws of 1909, Ch. 222,
Art. 2, Secs. 13 and 14; Scott v. Deweese, 181 U. S. 202, 45 L.
Ed. 822; Lantry v. Wallace, 97 Fed. 865; Scott v. Latimer, 89
Fed. 843; Foster v. Broas, (Mich.) 79 N. W. 696, (701); O'Con-
nor v. Witherby, (Calif.) 44 Pac. 227.

(5) Under point five of the opinion, Appellant cited:   Peter
Mintener Lumber Co. v. Harvey, 27 S. D. 624; State v. Paulson,
27 S. D. 24; Breeden v. Martens, 21 S. D. 257; State v. Stevens,
(S. D.) 92 N. W. 420; Noyes v. Belding, 5 S. D. 603; Sykes v.
Beck, (N. D.) 96 N. W. 844.

(6) Under point six of the opinion, Appellant cited:   Schager
v. Dinneen, (S. D.) 144 N. W. 719; Nelson v. National Drill
Mfg. Co., 20 S. D. 299; Pringey v. Guss, (Okla.) 86 Pac. 292;
Turner v. Yates, U. S. Supreme Court, 14 Law Ed. 824, (830.).

WHITING, J.   Defendant purchased a controlling interest
in plaintiff bank from its president; she was then elected presi-

dent and her husband cashier of said bank; her husband assumed active management thereof; after such change in management the bank continued business for a period of 40 days when it was found to be insolvent, and was closed by the state bank examiner.

Section 41, art. 2, c. 222, Laws 1909, which was enacted for the purpose of carrying out the provisions of section 3, art. 18, of the Constitution of this state, provides as follows:

"The stockholders of every bank shall be individually liable equally and ratably, not one for another, for the benefit of creditors of said bank, to the amount of their stock at the par value thereof, in addition to the amount invested in said stock. Such liability shall continue for one year after any transfer of stock, as to the affairs of the bank at the time and prior to the date of the transfer."

This action was brought by the state bank examiner, in the name of said bank, to recover, under section 41, supra, a sum equal to the par value of the stock which stood in defendant's name at the time the bank was closed by such bank examiner. The only defense relied upon by defendant was the rescission of her purchase of such stock. She contended that she had been led to purchase said stock through the fraudulent representations of its former owner; that upon the discovery of the fraud that had been practiced upon her, she had, about 40 days subsequent to the closing of the bank, but prior to the bringing of this action, rescinded the contract by which she had become the owner of such stock; and that, owing to such rescission, she was not holden as the owner of said stock. Verdict and judgment were for defendant in the trial court; a motion for new trial was denied; and from such judgment and the order denying a new trial this appeal was taken.

[1, 2] Appellant contends that, inasmuch as respondent was the owner of said stock at the time appellant bank was closed, her liability under section 41, supra, became fixed, and could not be changed by any subseuqent rescission of the contract by which she became the owner of such stock. No doubt the general rule, under a law such as the one before us, is that, where one becomes a purchaser of bank stock in consequence of frauds practiced upon him by another, whether such other be an officer of the bank or a mere stockholder, such purchaser must look to the wrongdoer

for redress, and is estopped, as against creditors, to deny that he is a shareholder, if at the time the rights of creditors accrued he occupied and was accorded the rights appertaining to his position as shareholder.    Michie, Banks and Banking, 1882; Scott v. Latimer, 89 Fed. 843, 33 C. C. A. 1.    Certainly a creditor of a corporation, when he becomes such, is under no obligation to ascertain what representations, if any, may have been made to the stockholders to induce them to become such.    Lantry v. Wallace, 97 Fed. 865, 38 C. C. A. 510, citing Pauly v. Trust Co., 165 U. S. 606, 17 Sup. Ct. 465, 41 L. Ed. 844, and Upton v. Englehart, 3 Dill. 496, Fed. Cas. No. 16,800.    The right of the bank, acting for its creditors, to hold the stockholders upon their statutory liability, is based upon the doctrine of estoppel, and, where there is nothing that should estop a stockholder from setting up a rescission of his purchase of stock, he should be allowed to prove the same and, upon such proof, should be released from liability—where the reason for the law does not exist the law should not apply. . In volume 1, Bolles' Modern Law of Banking, 137, it is said:

"A defrauded purchaser can rescind his purchase even after the bank's insolvency. To justify a rescission the proof must be clear and the buyer's action prompt, after discovering the bank's insolvency.    But if creditors are to suffer thereby, the rescission will not be permitted."

The burden of proof is on the party relying upon a rescission to affirmatively show the equities in his favor, and, among such equities, the fact that there are no creditors who became such while he was a registered stockholder (Michie, Banks and Banking, 1883; Wallace v. Bacon [C. C.] 86 Fed. 553); as one who appears as a shareholder at the time a bank becomes insolvent should be allowed to rescind his purchase as against the creditors of the bank only where his equity is superior to that of the creditors of the bank ('Wallace v. Hood [C. C.] 89 Fed. 11); if any creditor, upon whose behalf the bank sues, became such creditor relying upon the shareholder's apparent ownership, the shareholder is estopped from claiming a rescission.    It was well said in Bank v. Newbegin, 20 C. C. A. 339, 74 Fed. 135, 33 L. R. A. 727:

"There are obvious reasons why a shareholder of a corpora-

tion should not be released from his subscription to its capital stock after the insolvency of the company, and particularly after a proceeding has been inaugurated to liquidate its affairs, unless the case is one in which the stockholder has exercised due diligence, and in which no facts exist upon which corporate creditors can reasonably predicate an estoppel. When a corporation becomes bankrupt, the temptation to lay aside the garb of a stockholder, on one pretense or another, and to assume the role of a creditor, is very strong, and all attempts of that kind should be viewed with suspicion. If a considerable period of time has elapsed since the subscription was made; if the subscriber has actively participated in the management of the affairs of the corporation; if there has been any want of diligence on the part of the stockholder, either in discovering the alleged fraud, or in taking steps to rescind when the fraud was discovered; and, above all, if any considerable amount of corporate indebtedness has been created since the subscription was made, which is outstanding and unpaid—in all of these cases the right to rescind should be denied, where the attempt is not made until the corporation becomes insolvent. But if none of these conditions exist and the proof of the alleged fraud is clear, we think that a stockholder should be permitted to rescind his subscription as well after as before the company ceases to be a going concern."

See, also, Stufflebeam v. De Lashmutt, (C. C.) 101 Fed. 367.

[3] The former owner of respondent's shares was not a party to this action, and respondent had not, in a separate action, sought or obtained a judgment, decreeing, as between respondent and such former owner, a rescission of the contract whereby respondent had become the owner of these shares; respondent thus must stand upon a rescission actually consummated by her own acts prior to the bringing of this action.

[4, 5] From the above it is apparent that the burden was upon respondent to establish: (1) Facts showing that she was not estopped, from relying upon a rescission of her purchase of stock; (2) the rescission. Apparently recognizing this burden, respondent sought to prove that no depositors increased the amount of their deposits during the period from her purchase of stock until the bank closed; she also sought to prove that there were no new depositors during that time. To prove these facts

she called her husband and asked him whether he remembered of any depositors who became depositors or whose deposits had been increased after he became cashier. All questions of this nature were objected to, among other grounds, upon the ground that such testimony was not the best evidence. That the books of the bank were the best evidence is too clear to need citation of authority in support thereof. No attempt was made to excuse their nonproduction. Considering the vital importance of the facts sought to be proven by this oral evidence, we cannot but hold that the admission of such evidence, over proper objections, was reversible error.

[6] To prove rescission, respondent testified that, upon discovery of the falsity of the representations that had been made to her, she wrote a letter to the party from whom she purchased the stock. It was through the writing and mailing of such letter that respondent contends she consummated a rescission of the purchase of such stock. After proof of the mailing of the letter, and without any further proof whatever, she was, over proper objections; allowed to introduce in evidence a writing which she claimed to be a copy of the letter mailed to such third party. While the evidence showed that the letter was mailed addressed to Fargo, N. D., there was no evidence that the party to whom the letter was addressed, and who might be presumed to have the same, was, at the time of the trial, beyond this jurisdiction. Furthermore, there may be serious question whether, in view of the importance of this letter to establish respondent's defense, the rule announced by this court in Hagaman v. Gillis, 9 S. D. 61, 68 N. W. 192, should be held to apply. We would refer counsel to Wigmore on Evidence, § 1213; Jones on Evidence (Civil Cases) § 217; Wiseman v. N. P. Ry. Co., 20 Or. 425, 26 Pac. 272, 23 Am. St. Rep. 135; Pringey v. Guss, 16 Okl. 82, 86 Pac. 292, 8 Ann. Cas. 412; Turner v. Yates, 16 How. 14, 14 L. Ed. 824.

Other questions are raised by appellant, but, in view of the fact that they are not likely to arise upon another trial of the case, we do not deem it necessary to discuss them.

The judgment and order appealed from are reversed.