[No. 847. Decided June 15, 1893.]

The COMMERCIAL BANK OF VANCOUVER, *Respondent*, v. ELI SCOTT AND MARTHA E. SCOTT, *Appellants*.

PROMISSORY NOTE GIVEN BY HUSBAND—LIABILITY OF WIFE—
COMMUNITY DEBT.

A wife cannot be joined as a party defendant to a suit upon a promissory note executed by the husband alone, although the complaint may allege that the note was given for a community debt. (SCOTT and HOYT, JJ., dissent.)

*Appeal from Superior Court, Clarke County.*

*Miller & Stapleton,* for appellants.

*N. H. Bloomfield,* and *W. Byron Daniels,* for respondent.

The opinion of the court was delivered by

ANDERS, J.—This action was brought to enforce the payment of a promissory note made and delivered by Eli Scott, the husband of the appellant, to one Durand, and by him endorsed and transferred, before maturity, and for a valuable consideration, to the respondent.

In addition to the ordinary allegations in such cases, the complaint avers that the plaintiff purchased the note with full knowledge that the defendants were husband and wife at that time, and also at the time of the execution and delivery of the same by the said Eli Scott to the said payee; that the said note was given by the said defendant. Eli Scott to the said Durand, in payment of certain of the capital stock of the corporation known as the Durand Organ Company, of Portland, Oregon, which capital stock was in shares issued to the defendants, and was received and held by them as their community personal property; that the defendants at all the times mentioned in the complaint were and still are husband and wife, and that the said wife became the owner of a community interest in said shares of capital stock, and together with her husband received dividends thereon; and that the debt of the defendants as evidenced by said note was and is their community debt. The appellant interposed a demurrer to the complaint on the ground that the same did not state facts sufficient to constitute a cause of action against her. Her demurrer was overruled by the court and exception taken and allowed.

She thereupon filed her separate answer admitting that

the said stock was received by the said Eli Scott and re-
tained by him, but denying that any dividends had been re-
ceived thereon, and that the debt of said note became a
community debt, and setting up as a further answer and
defense that said note was procured through misrepresenta-
tion, in that said share of stock was of no value for the reason
that the said Durand Organ Company was in fact insolv-
ent, though falsely represented to be solvent, and that there
was therefore an entire want of consideration for said note.
A demurrer to this answer was sustained by the court, where-
upon it was agreed by and between counsel for plaintiff and
defendants that the answer of Eli Scott be withdrawn
and judgment taken against him as demanded in the com-
plaint, subject to his right of appeal; and the defendant,
Martha E. Scott, refusing to answer further, judgment was
entered against her, from which she appealed.

There are but two questions presented for our considera-
tion on this appeal.   The first is, did the court err in over-
ruling appellant's demurrer to the complaint?  And the
second is, did the court err in sustaining the demurrer to
appellant's separate answer?  And if the first question be
answered in the affirmative, a determination of the second
will become unnecessary.

The position assumed by the respondent in this case is
peculiar, if not unique.   As indorsee of a negotiable
promissory note it sues the maker and another person not
a party to the contract or in any way referred to in the
instrument, and demands judgment against both.   While
citing no precedents for such proceeding, it claims a right
of action against the appellant because it alleges in effect
in its complaint that the consideration for which the note
was given inured by some occult·operation of law to her
benefit, and that she therefore became equally liable with
her husband.   But how any or all of the allegations in the
complaint as to the original consideration for the note

could be construed so as to make the appellant liable as a party to it, contrary to the very terms of the instrument itself, we are utterly unable to comprehend. The respondent did not bring its action upon the original indebtedness of Eli Scott and the appellant, or either of them, for the stock sold by Durand, nor was it in a position to do so. That was a matter of no concern to the respondent. It bought a note made by Eli Scott, presumably for a money consideration, and brought its action upon it, and is entitled to judgment for the amount due thereon against him only. As against appellant the complaint fails to state a cause of action, and the judgment must therefore be reversed, and the cause remanded to the lower court with directions to sustain the demurrer.

DUNBAR, C. J., and STILES, J., concur.

SCOTT, J. (*dissenting*).—I am unable to concur in the opinion rendered in this case, logical as it reads. It must be borne in mind that we have a system of property rights peculiar to ourselves, and for that reason some of the rules generally applicable to suits on negotiable paper well settled elsewhere cannot be applied here with safety. Our laws recognize authority in the husband to create debts on the part of the community. The wife may also create debts for which the community estate is liable, at least for some purposes, although she may not have such power generally. The husband can contract with reference to his separate property and create debts in its acquisition, management and disposition which may probably be a charge upon the community personal property because of his power to dispose of the same, but could not be made a charge upon any part of the community real estate prior to a dissolution of the community, except by the act of both of its members, unless for improvement thereon under the provision in § 1400, Gen. Stat., and it may be with the

possible further exception of such real estate as he holds the record title to, by force of the act of the legislature approved March 9, 1891 (Laws 1891, p. 368), where the wife has not given the notice prescribed by the act. The wife may also contract and create debts with reference to her separate property which could not be made a charge upon any part of the community property prior to a dissolution of the community unless in such cases as would come under the act last mentioned.

Such being the law, it may be of vital interest to a creditor to know whether or not an obligation which he holds contracted by one of the parties is a separate debt or a community debt, and its community character can only be established in an action to which both members of the community are parties. No one will contend that the wife can be concluded upon this question, it seems to me, without an opportunity to be heard, as such a rule would be destructive of the entire community system. This question was brought to the attention of the territorial supreme court in *Andrews v. Andrews*, 3 Wash. T. 286, 14 Pac. Rep. 68, and, while not decided, it was said there that —

"We see no way for a creditor to get a judgment lien conclusively operative upon such real estate, except as the result of an action or proceeding to which both husband and wife were parties, and in which the community character of the debt is admitted or in issue. It may be that he could come into court in the first instance, alleging the community character of the debt, and obtain a judgment as for a community debt."

Such an action upon an obligation executed by one of the parties only would be something of an anomaly, but *the wife is in a sense a party to every community debt, even though in the shape of a note given by the husband, and the right to sue both members of the community thereon is rendered necessary by the situation.* If this cannot be done, when can or should the character of such a debt be deter-

mined so as to be binding upon all the parties interested. It may be said that upon the issuance of an execution upon a judgment obtained against the husband, and a levy upon community real estate thereunder, the wife can come in and resist a sale of the property, or show that the judgment was not obtained upon a community debt. But there are serious objections against limiting the method to such a proceeding. The wife, through absence or otherwise, might have no knowledge of the levy, and in such a case must the execution creditor go ahead at his peril, and must the purchaser under such an execution sale take the chances of having to defend an action which the wife may thereafter bring, and of losing the property if the debt upon which the judgment was obtained is shown not to have been a community debt. If so it is evident that real estate under such circumstances would bring but a very small proportion of its value.

Or, will it be contended that upon the issuance of an execution, and its levy upon community real estate, the creditor should bring a suit or proceeding in aid of the execution against the community, to establish the community character of the debt? If so, he might as well bring the action originally against the community, and save the delay and expense of a second suit. Any objection that can be raised to joining the wife in the suit in the first instance, in an action upon a note given by the husband for a community debt, would apply with equal force to a subsequent proceeding against the wife to determine the community character of that same debt, in the form of a judgment against the husband.

Our laws relating to proceedings against husband and wife for the collection of debts and the enforcement of obligations are yet very much unsettled. The subject is a complicated one, with innumerable intricate bearings, and a solution thereof compatible with the business interests of

the country, and at the same time affording protection to the husband and wife community, is of the greatest importance. It seems to me the decision rendered in this case strikes hard at the foundation of the commercial interests of the people.

There are many questions affecting community rights and obligations which will likely be presented for determination, some of which are at least indirectly involved in this action. Can a creditor in enforcing the collection of a community debt proceed against the property of the community or the separate property of either of its members indiscriminately.

In *Oregon Improvement Co. v. Sagmeister*, 4 Wash. 710 (30 Pac. Rep. 1058), we held that debts contracted by the husband are *prima facie* community debts. But this presumption upon a negotiable note should not be allowed to grow into a conclusive one as against the wife, in whosesoever hands it may be. Although if in the hands of a holder in good faith without notice the wife would probably be concluded as to all defenses going to a misrepresentation of the consideration therefor by the party originally obtaining the note, as this should follow from the fact that the husband had the right to create the debt against the community for community purposes. But the wife must certainly have the right to be heard upon the proposition as to its being a community debt in fact.

The rule that the consideration for a negotiable note can not be inquired into as against a subsequent holder in good faith should only conclusively operate as against the individual executing the note. But the creditor should be permitted to show that it is a community debt, and when that fact is established, the rule should operate against the community as to any further questions going to the consideration, for it can then be said that the community executed it. It will not do to hold that the presumption, that a

negotiable note executed by the husband creates a debt against the community, is an absolute one, as it would vest power in the husband to indirectly dispose of the entire community estate, both real and personal. One of the main purposes. of the law is to prevent this. In holding that the consideration cannot be inquired into in favor of the maker against a subsequent holder in good faith, the creditor is given all the protection that the common law gave him. The rule was invoked for his benefit and to further commercial interests, and would not militate against a rule permitting him to establish the fact that there was another party liable upon that same note not patent upon its face. This would be extending the doctrine, instead of limiting it.

The decision of all such questions affecting the community must be approached with great care, having regard for the welfare of the community, and for the commercial interests of the people, and each question as it arises must necessarily be considered with reference to its bearing upon others, or interminable confusion and hardship will result. With great deference to the straightforward, apparently simple holding in this case, it seems to me it involves much more than is at first sight visible. I think the plaintiff in this case should have the right to have the character of its claim settled in this action, and to have a judgment against all the parties liable thereon. If it is to be held that in this state a note executed by the husband is conclusively his separate debt only, most disastrous consequences will flow from .it, as the great bulk of the property held in the state is undoubtedly community property, and in many cases, as in this one, the creditor would not be in a position to sue upon the original debt. The commercial value of negotiable paper would be most seriously impaired thereby. On the other hand, if such a note is to be held conclusively a community debt, then there is an end to the supposed

protection afforded the wife by the community laws, and a long stride backward has been taken in the relations of husband and wife.

HOYT, J., concurs.