[No. 1211.   Decided December 3, 1894.]

THOMAS McDONOUGH, *Respondent*, *v.* CHARLES CRAIG, *Defendant*, ANNIE CRAIG, *Appellant*.

PROMISSORY NOTE EXECUTED BY HUSBAND—COMMUNITY DEBTS—
LIABILITY OF COMMUNITY PROPERTY—PROPER PARTIES TO
ACTION.

Any liability incurred by the husband in the prosecution of any business is *prima facie* a charge against the community; and the presumption to that effect will continue in force until it is overthrown by proof that such liability was not incurred in any business of which the community would have had the benefit, if profit had been realized therefrom.

NOTE—The authorities as to the liability of community property for debts are collated in a note to the case of Oregon Improvement Co. v. Sagmeister, 19 L. R. A. 233.   For a full discussion of the rights of creditors and liabilities of the community, see, also, Ballinger on Community Property, ch. 5.

The community character of a debt is not changed by the fact that it is evidenced by the negotiable note of the husband alone; and a judgment rendered upon such note is *prima facie* enforceable against the property of the community.

In an action upon a negotiable promissory note executed by the husband alone for what is alleged to be a community debt, the wife is a proper party defendant; and, upon a verdict or finding in favor of the plaintiff upon such issue, he is entitled to have the debt adjudged as that of the community. (*Commercial Bank v. Scott*, 6 Wash. 499, qualified).

*Appeal from Superior Court, King County.*

*Wilshire & de Steiguer*, for appellant.

*Fishback, Sapp & Ferry*, for respondent.

The opinion of the court was delivered by

HOYT, J.—This action was brought to recover upon two promissory notes executed by defendant Charles Craig. The appellant, Annie Craig, was joined as a defendant, and the allegations in the complaint relied upon as justifying such joinder were that she was and had been during the entire time covered by the transactions, the wife of said Charles Craig ; that the promissory notes in question had been given by the husband in the prosecution of community business, and that the consideration therefor was used for its benefit. And it was sought by these allegations to have it adjudged that the debt was that of the community, so that its property would be subject to the judgment rendered in the action.

Plaintiff also sought to have the judgment rendered against the wife as well as the husband ; but this part of the relief asked was not obtained, as it was only adjudicated as against the wife that the debt was that of the community, and that the judgment could be enforced by sale of its property.

The brief on the part of the appellant has discussed with much detail and ability the law in relation to the execution of promissory notes, and the rights which may be founded thereon. But in our opinion this technical discussion can

have little, if any, weight in the determination of the questions presented on this appeal.   There are but two questions of substance which seem to us to be involved in the decision of this case ; one is as to whether or not the community property is liable for a debt incurred for its benefit by the husband alone ; and the other is as to the effect upon the status of such debt of the giving of a negotiable promissory note therefor by the husband in his own name.   The further question involved relates to the stage in the proceedings for the collection of the debt when it is proper to have its status judicially determined.

In our opinion the first question above stated has been settled by the decisions of this court.   In the case of *Oregon Improvement Company v. Sagmeister*, 4 Wash. 710 (30 Pac. 1058), we held that community property could be sold upon a judgment against the husband, rendered for an indebtedness incurred by the husband by reason of losses in business in which he was engaged, with which the wife had no connection further than that cast upon her, by the law, as a member of the community.   In that case it was held that since under our statutes the community was *prima. facie* entitled to the profits of any business carried on by the husband, good conscience and fair dealing, as well as logic, required that it should abide the result of such business.

We are satisfied with the rule laid down in that case.   A further consideration of the question has confirmed our convictions that everything rightfully done by the husband will be presumed to have been done in the interest of the community, and that such presumption will obtain unless it is made affirmatively to appear that the transaction in question related to his separate property.   The legislature never could have intended that everything acquired by the husband as the result of any and every transaction in which he might be engaged should be presumed to be the property of the community, and at the same time not have intended that a like presumption should obtain as to any indebtedness or liability incurred on account thereof.   Under the law as established by that case, it must be held that any lia-

16-10W

bility incurred by the husband in the prosecution of any business is *prima facie* a charge against the community ; and that the presumption to that effect will continue in force until it is overthrown by proof that such liability was not incurred in any business of which the community would have had the benefit, if profit had been realized therefrom.

This brings us to a consideration of the second question. It is argued with great ability that negotiable promissory notes are a species of contract having special privileges and rights, and carrying with them as incident thereto special rules of construction.   This is no doubt true, but from such fact we are unable to agree with the contention that by the giving of such a note by the husband the character of the indebtedness as between him and the community is changed. Under the rule above announced, if the husband should go into a store and purchase a bill of goods and have it charged to him alone upon the books, it will be presumed to be a debt of the community, and a judgment against him rendered thereon will *prima facie* be a charge upon community property ; and if this is so, can it be held that if, instead of having the goods charged to him upon the books, he should give a negotiable note in payment therefor, the debt evidenced thereby would be so changed as to be presumably only enforceable against the separate property of the husband?   It will not be contended that the status of the indebtedness would be changed by putting the agreement to pay in writing not negotiable ; and we can see nothing in reason or good conscience which would require us to hold that the nature of the indebtedness was changed by reason of a change in the form of the writing from a non-negotiable to a negotiable instrument.

Much of the argument of counsel seems to have been directed to the alleged fact that under the general rule the maker of a negotiable promissory note is the only one who can be made a party to an action brought thereon by the payee.   But if this were so, such fact could have little force under the peculiar provisions of our statute.   If other con-

tracts of the husband bind the property of the community, why should not his negotiable note also bind it?

But there are numerous exceptions to the general rule as stated by counsel for appellant. For while it is no doubt true that so far as the technical enforcement of the note itself and the rendition of a judgment thereon are concerned the rule has not been too broadly stated, yet it often happens that in the same action in which the enforcement of the conditions of a negotiable note are sought, others than parties thereto are made parties to the action, by reason of some other contract to which the note bears some relation. A familiar instance of this kind under the old practice was where a note had been given by the husband alone, to secure which the husband and wife had joined in a mortgage. In such a case it was the common practice to seek a judgment upon the note against the husband, and at the same time to have an adjudication that such judgment might be satisfied out of certain specific property, by reason of a mortgage thereon made by the husband and wife; and, that such adjudication might be secured, the wife was a necessary party to the action. There is the same reason for making the wife a party, if, on account of her connection with the community, her interests in its property could be subjected to the judgment rendered upon the note. In our opinion the community character of the debt is not changed by the fact of its being evidenced by the negotiable note of the husband alone. It follows that a judgment rendered upon such note would *prima facie* be enforceable against the property of the community.

And this leaves for consideration only the question of practice as to the time when this *prima facie* presumption can properly be made conclusive. That the one having such a claim may at some time have this *prima facie* presumption made conclusive so evidently results from well-settled rules of practice that it will not be questioned; and if this is true, there would seem to be no good reason why this should not be done at the earliest possible moment, when the necessary parties can be brought before the court for that pur-

pose. It would be as reasonable to hold that in case of a note and mortgage, judgment against the husband upon the note must be first obtained and afterwards some proceeding instituted to authorize its enforcement against the property described in the mortgage, as to hold that the judgment must first be obtained upon the note of the husband given for the benefit of the community and afterwards an adjudication had which would authorize its enforcement against the community property.

That the *prima facie* conclusion following from the rendition of the judgment can only be made judicially conclusive by some action to which the wife is a party is too evident to require argument. From which it would follow that not only the rights of the creditor, but those also of the husband and wife as members of the community, would be best subserved by having the *prima facie* presumption made conclusive, at the earliest possible moment. If, at the time of the sale, the *prima facie* presumption has not been made conclusive, all who desired to bid at such sale would not stand in equally favorable positions. Some might have such knowledge that they could act in view of a certain future determination that the *prima facie* presumption was in accordance with the facts; while others might have no such knowledge.

It seems to us the substantial merits of this appeal depend upon the question, as to whether or not debts incurred by the husband are presumed to have been so incurred in the business of the community, and that the existence of such presumption has been established by the decisions of this court. The other questions sought to be raised are largely those of convenience and public policy, which it seems to us will be best subserved by sustaining the practice adopted by the superior court in the case at bar.

This conclusion is the logical result of the situation growing out of the relation of the husband and the business he transacts to the community. But in addition thereto we think that full force can only be given to the provisions of § 1400 of the General Statutes by allowing an adjudication

as to the nature of the debt in the action brought for its recovery. By that section it is enacted that the husband has the management and control of the community real estate, but shall not sell or incumber it without the wife's joining him in executing the deed or other instrument of conveyance; to which there is a proviso to the effect that such community real estate shall be subject to liens of mechanics and to liens of judgments recovered for community debts and to sale on execution issued thereon. From which it will be seen that the community property is liable to judgments for community debts.

It necessarily follows that the plaintiff is entitled to have his judgment show upon its face the fact that it is for a community debt. Otherwise, it would not appear therefrom that it was a lien upon community property. And that such adjudication may be had, the wife as well as the husband must be a party to the action. That she is not only a proper but a necessary party to a suit which seeks to establish a mechanic's lien against community real estate, has been directly ruled by this court in *Littell & Smythe Mfg. Co. v. Miller*, 3 Wash. 480 (28 Pac. 1035); and since by the section under consideration the provision as to sale on execution upon judgments for such liens and for those recovered for community debts, are joined in the same clause, it must follow that the wife is at least a proper party to any action in which the judgment is, by the statute, made a lien on the community property.

The conclusions to which we have come are to some extent different from those announced in the opinion of the majority of the court in the case of *Commercial Bank v. Scott*, 6 Wash. 499 (33 Pac. 829), and to that extent the rulings in that case must be considered as qualified.

The judgment will be affirmed.

DUNBAR, C. J., and SCOTT, J., concur.

STILES, J. (*concurring*).—It cannot be denied that there is much force in the argument made that convenience will be subserved by determining any debt for which the hus-

band is sued to have been a community debt at the same time that the judgment is rendered ; and I am not prepared to say that this consideration of convenience ought not to be sufficient for this court to set aside all the hitherto well-understood principles of law and practice applicable to such cases, in view of the peculiar law which it has to administer. Having to deal with an innovation in the law of real property I know of no better way to carry out its spirit than by engrafting more innovations as cases arise and seem to demand them.    It was only by judicial rulings that the common law affecting real property became a body of well understood precedents which we call a system ; and it seems that in order to evolve anything definite out of our own law it may be necessary to renew the process.    Certainly no more curious proceeding was ever taken in a court of justice than the one presented in this case, where it was not alleged or pretended that there was any community property, but the sole object of bringing in the wife was to convert a presumption into certainty and declare it in the form of a judgment.    Still, the circumstances seem to require it, and with a view to a settlement of the question, I concur in the result.