## WALLACE v. BACON.

(Circuit Court, S. D. California. April 4, 1898.)

1. PLEADING—MATTERS OF PUBLIC RECORD—INFORMATION OR BELIEF—MOTION TO STRIKE OUT.

An answer denying matters of public record, on the ground that defendant has not sufficient information or belief concerning them, will be stricken out as sham.

2. SUBSCRIPTION TO CORPORATE STOCK — INSOLVENCY OF CORPORATION — RESCISSION FOR FRAUD.

A subscription to stock induced by fraud may be rescinded after, as well as before, the corporation ceases to be a going concern, where no considerable

time has elapsed since the subscription, if the subscriber has taken no active part in the management of the corporation's affairs, has been diligent in discovering the fraud and in taking steps to rescind, and where no considerable amount of corporate indebtedness has been created since the subscription, and is still unpaid.

3. INSOLVENT NATIONAL BANK — LIABILITY OF STOCKHOLDERS — RESCISSION OF SUBSCRIPTION—PLEADING.

An answer seeking to rescind a subscription to stock of an insolvent national bank, on the ground that it was obtained by fraud, must show that the creditors for whose benefit the assessment sought to be enforced was levied did not become such during the time defendant held such stock, and allege facts showing that defendant has not been guilty of laches.

4. SAME—RESCISSION OF SUBSCRIPTION—ALLEGATION OF DILIGENCE.

A national bank went into liquidation November 30, 1896. An action against a stockholder to enforce an assessment made by the comptroller of the treasury was commenced November 9, 1897. Defendant's answer set up in detail the fraud by which he had been induced to subscribe and pay for the stock, alleged that he had ever since been a resident of a distant state, and that, until a short time before the filing of the complaint, he had no opportunity of discovering the fraud. *Held,* that diligence was not shown.

Brousseau & Montgomery, for plaintiff.

C. N. Sterry and McKinley & Graff, for defendant.

ROSS, Circuit Judge. This action was commenced November 9, 1897, by the plaintiff, as receiver of the Missouri National Bank of Kansas City, to recover of the defendant the amount of an assessment levied by the comptroller of the currency on the 30th day of July, 1897, of $100 upon each of 100 shares of the stock of the insolvent bank alleged by the plaintiff to have been owned and held by the defendant on the 30th day of November, 1896, when the bank is alleged to have failed and gone into liquidation. The defendant filed an answer, including a counterclaim, and also filed a cross complaint. Paragraph 1 of the first answer contains a denial that the defendant ever was the owner of any shares of the capital stock of the insolvent bank. The second, third, and fourth paragraphs of the first answer contain the statement that he has no information or belief on the subject sufficient to enable him to answer the allegations of the complaint in respect to the appointment of the receiver and his qualification, or in respect to the levy of the assessment by the comptroller of the currency, and on that ground he denies those allegations. In the second and third answers made by the defendant, as well as in his counterclaim and cross complaint, he expressly admits and alleges his purchase of 100 shares of the capital stock of the insolvent bank, and the issuance of the certificate therefor to him on the 16th day of July, 1896, in consideration of his payment to the bank of $10,000. The motion of the plaintiff to strike out the first paragraph of the first answer as sham is therefore granted; also, the motion to strike out the second, third, and fourth paragraphs of the first answer upon the same ground. Matters of public record cannot be denied on the ground that a party has not sufficient information or belief concerning them. In other respects, the motion to strike out is denied.

The remaining answers and the counterclaim and cross complaint contain, in substance, the same matter, consisting of averments to the effect that the defendant's purchase of the shares of stock of the in-

solvent bank was made solely by reason of fraudulent representations made to him, as well as to one Calvin Hood, who was at the time a director of the bank, and who repeated the same to the defendant, respecting the financial condition of the bank. Those representations are set out in detail, and are alleged to have been made by the president of the bank, willfully and falsely; that the defendant believed them to be true, and, relying upon their truth, bought the stock, and paid his money for it. He alleges that he is a resident of the city of Los Angeles, Cal., and was, at the time he bought the stock, and at the time the false representations were made to him, on a short visit to Kansas City, ever since which time he has resided in Los Angeles, and never had any knowledge that the representations upon which he made the purchase were false, or of any fact causing him to believe them false, until a short time before the service of the complaint in this action upon him, and that, until a short time before the filing of the complaint, he had no opportunity to know nor any reason to believe such representations were false; that as soon as he learned of the condition of the bank, at the time he bought the stock and paid his money for it, he "rescinded said contract of purchase, and tendered said certificate of stock to the plaintiff, as receiver of said bank, and demanded that he be paid or allowed a claim for $10,000" out of the assets of the bank in the hands of the receiver. The counterclaim, as well as the cross complaint, is for that sum, with costs. Neither the answer, counterclaim, nor cross complaint put in issue the averment of the complaint that the bank failed and went into liquidation on the 30th day of November, 1896; nor do either of those pleadings contain a word concerning the creditors of the bank existing at the time of its failure, and while the defendant was the holder of 100 of its shares of stock, in whose behalf and for whose protection the assessment in question was levied.

The question whether a stockholder should be permitted to rescind his subscription on the ground of fraud after the insolvency of the company, said the circuit court of appeals in Bank v. Newbegin, 20 C. C. A. 339, 74 Fed. 135—

"Is attended with much doubt and difficulty, because of the peculiar relation which a shareholder sustains to the creditors of the company. In the case of Upton v. Englehart, 3 Dill. 496, 505, Fed. Cas. No. 16,800, Judge Dillon, while discussing this subject, pointed out that the unbending English rule [to the effect that a suit to rescind a stock subscription on the ground of fraud cannot be maintained by a stockholder, no matter what diligence he may have shown, after proceedings have been taken to liquidate the affairs of the corporation on the ground of its insolvency] was influenced in a measure by the companies act (25 & 26 Vict. c. 89), which makes provision for a 'register of stockholders,' to which the public have access, and that, as no similar register of stockholders is ordinarily kept in the United States, the English decisions holding that the commencement of a proceeding to wind up a company is in itself a bar to a suit for rescission are not strictly applicable to the conditions which prevail here. He concluded the discussion of the question as follows: 'I am inclined to the opinion that if a company has fraudulently misrepresented or concealed material facts, and thus drawn an innocent person into the purchase of stock,—he at the time being guilty of no want of reasonable caution and judgment, and afterwards being guilty of no laches in discovering the fraud,—and he thereupon, without delay, notifies the company that he repudiates the contract, and offers to rescind the purchase, these facts concurring, I am inclined to the opinion that the bank-

ruptcy of the company, subsequently happening, will not enable the assignee to insist that the purchase of stock is binding upon him.' There are obvious reasons why a shareholder of a corporation should not be released from his subscription to its capital stock after the insolvency of the company, and particularly after a proceeding has been inaugurated to liquidate its affairs, unless the case is one in which the stockholder has exercised due diligence, and in which no facts exist upon which corporate creditors can reasonably predicate an estoppel. When a corporation becomes bankrupt, the temptation to lay aside the garb of a stockholder, on one pretense or another, and to assume the role of a creditor, is very strong, and all attempts of that kind should be viewed with suspicion. If a considerable period of time has elapsed since the subscription was made; if the subscriber has actively participated in the management of the affairs of the corporation; if there has been any want of diligence on the part of the stockholder, either in discovering the alleged fraud or in taking steps to rescind when the fraud was discovered; and, above all, if any considerable amount of corporate indebtedness has been created since the subscription was made, which is outstanding and unpaid,—in all of these cases the right to rescind should be denied, where the attempt is not made until the corporation becomes insolvent. But if none of these conditions exist, and the proof of the alleged fraud is clear, we think that a stockholder should be permitted to rescind his subscription as well after as before the company ceases to be a going concern."

It is for the defendant, who seeks to avoid the consequences of his holding of stock in a national bank, to allege the facts that exonerate him. If the creditors in whose behalf an assessment is levied by the comptroller of the currency did not become such during the time the defendant was the holder of stock, it is for him to show the fact. This the defendant has wholly failed to do. And, in respect to diligence, the showing made by the defendant is altogether insufficient. The bank went into liquidation, as has been seen, November 30, 1896. The present action was commenced November 9, 1897. The defendant's averment is that he did not have the opportunity of discovering the fraud of which he complains until "a short time before" the filing of the complaint. Diligence on the part of the defendant is one of the essential things for him to show. It is not shown by the allegation referred to. Demurrers sustained, with leave to the defendant to amend within 10 days, if he shall be so advised.