AMERICAN SURETY CO. OF NEW YORK v. SANDBERG et ux.

(District Court, W. D. Washington, S. D. July 3, 1915.)

No. 1605.

1. INDEMNITY ⊜⟶11—LIABILITY OF INDEMNITOR—GROUNDS.
    A surety, against which a judgment has been rendered for default of the principal, may, without showing payment of the judgment, recover from an indemnitor, who has agreed to save the surety harmless against every demand and judgment, and place the surety in funds to meet every demand.
    [Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 21–25; Dec. Dig. ⊜⟶11.]

2. STIPULATIONS ⊜⟶14—OPERATION—AMENDMENT OF PLEADING.
    The effect of a stipulation between a surety and its indemnitor as to surety's items of expense incurred in defending a suit against it for default of the principal is to amend the complaint, setting forth the contract of indemnity and averring the rendition of judgment against the surety for a specified sum.
    [Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 24–37; Dec. Dig. ⊜⟶14.]

3. EVIDENCE ⊜⟶349—RECORDS OF JUDICIAL PROCEEDINGS—AUTHENTICATION—STATUTORY PROVISIONS—APPLICABILITY.
    Rev. St. § 905 (Comp. St. 1913, § 1519), providing for the authentication of the records of judicial proceedings of the courts of any state or territory, applies only to the authentication of records of judicial proceedings in the states and territories, and does not provide for the authentication of judicial proceedings in foreign countries.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1384–1387; Dec. Dig. ⊜⟶349.]

4. PLEADING ⊜⟶122—DENIAL OF MATTERS ON INFORMATION AND BELIEF—PRESUMPTIONS.
    To deprive a defendant of the right under the Code of Washington to interpose a denial on information and belief, the matter so denied must be presumptively within his knowledge.
    [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 249–252; Dec. Dig. ⊜⟶122.]

5. PLEADING ⊜⟶122—DENIAL OF MATTERS ON INFORMATION AND BELIEF—PRESUMPTION—"ACCESS TO PUBLIC RECORDS."
    A defendant has such presumptive knowledge of his personal acts or those of his agent, or of public records to which he has access, or allegations of rendition of judgment against him, as to deprive him of the right under the Code of Washington to interpose a denial thereof on information and belief; but a defendant is not presumed to know matters of record in foreign countries, and the existence thereof he may deny on information and belief, the right of "access to public records" including, not only

a legal right of access, but a reasonable opportunity to avail oneself of the same.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 249–252; Dec. Dig. ☞122.]

6. PLEADING ☞121—DENIAL OF MATTERS ON INFORMATION AND BELIEF—PRESUMPTION.

A citizen and resident of the state of Washington may, on information and belief, deny the existence of a judicial record of the Supreme Court of British Columbia, for, though it may be presumed, that they are public records, it is not reasonable to require him to inform himself of the contents thereof, to qualify himself to answer in a suit against him in the United States.

[Ed. Note. · For other cases, see Pleading, Cent. Dig. §§ 245–248; Dec. Dig. ☞121.]

7. INDEMNITY ☞14—LIABILITY OF INDEMNITOR—ESTOPPEL.

An indemnitor of a surety, who has notice of the pendency of an action against the surety on his bond, and who has been called on to defend is estopped, when sued on his indemnity, to deny the conclusiveness of judgment rendered.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 41; Dec. Dig. ☞14.]

8. INDEMNITY ☞15—LIABILITY OF INDEMNITOR—EVIDENCE.

An indemnitor of a surety on a bond of a contractor for work in British Columbia, who was not made a party to an action in British Columbia against the surety on the bond, and who had nothing to do with the conduct of the action, may insist on strict proof of the judgment against the surety relied on, as a basis for recovery, for he is not presumed to have knowledge of the records of courts of foreign countries.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 36–40, 42–47; Dec. Dig. ☞15.]

9. EVIDENCE ☞349—JUDICIAL RECORDS—FOREIGN COUNTRIES—AUTHENTICITY.

A certified copy of a judgment rendered by a court in British Columbia, certified as a true copy by the district registrar, and bearing the impress of what purported to be a seal of the court of British Columbia, and certificate of the consul general of the United States in Vancouver, to the effect that the registrar was duly appointed and commissioned registrar of the province of British Columbia, is inadmissible for want of proper authentication.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1384–1387; Dec. Dig. ☞349.]

10. HUSBAND AND WIFE ☞268—COMMUNITY DEBTS—WHAT ARE.

A husband and wife had no financial interest in a construction company contracting to construct special work. The husband, without consideration and without the knowledge of the wife, agreed to indemnify the surety of the company at a time the company was constructing a building for the husband and wife, but which building was then substantially completed and paid for by the husband. The husband paid, direct, materialmen furnishing supplies to the company for other construction work. A stockholder of the company promised to indemnify the husband, who brought suit to enforce the agreement. About the time the husband agreed to become indemnitor, he became surety on notes of the company, and later stock of the company was delivered to his attorneys pending investigation as to whether he would, in self-protection, undertake to complete the construction company's work, and he also caused certain property to be deeded over to another company, of which he owned stock, to secure the notes on which he was surety. Held, that the liability incurred by the husband as indemnitor was not a community debt, and property acquired by the

husband and wife after their marriage was not under the laws of Washington liable therefor, but the husband was alone liable.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 562; Dec. Dig. ☞268.]

At Law. Action by the American Surety Company of New York against Peter Sandberg and wife. Conditional judgment for plaintiff.

W. C. Bristol, of Portland, Or., and Ellis Lewis Garretson, of Tacoma, Wash., for plaintiff.

Bates, Peer & Peterson, of Tacoma, Wash., for defendants.

CUSHMAN, District Judge. Plaintiff sues to recover against the defendants on account of an agreement entered into by the defendant Peter Sandberg to indemnify the plaintiff in giving a bond for the performance by the Wells Construction Company of a certain contract for the construction of a dam and canal in British Columbia for the Powell River Paper Company. Plaintiff alleges the bringing of a suit in British Columbia against it upon the bond, that it called upon the defendant Peter Sandberg to defend that action, and that a judgment was obtained in such action against plaintiff in the sum of $13,632.94. It alleges that, by paragraph 10 of the indemnity agreement, set out below, the defendant Peter Sandberg contracted with the plaintiff in the prosecution of the business of the community consisting of the two defendants, and that the community thereby obtained the benefit of the continuance of the business of the Wells Construction Company, and obtained the postponement of payment and discharge of indebtedness of Peter Sandberg and the community estate and business from liability thereon to said Wells Construction Company. Plaintiff asks judgment against Peter Sandberg and Mathilda Sandberg, his wife, to the extent of her interest, whatever it may be, for $25,000 and interest, and the additional sum of $1,449.85 and interest, the latter item on account of plaintiff's expenses in defending the suit against it in British Columbia.

Defendants, by separate answers, deny that either of them or the community formed by them was interested in the Wells Construction Company's contract with the Powell River Paper Company, and aver that Peter Sandberg signed the application for the sole use, benefit, and accommodation of the Wells Construction Company, without consideration to the defendants, or the community, and not in the prosecution of any business of the community. They deny that Peter Sandberg signed the application with any understanding for the postponement of payment or discharge of any debt to the Wells Construction Company. Defendants interpose general denials to other portions of the complaint, and set out the date of their marriage, a description of the community property, and pray for a dismissal of the action, and, in the alternative, that, if judgment be rendered against Peter Sandberg, it be against him individually, and that it be adjudged that the debt is not an obligation of the community, and that it be adjudged that the defendants' property described in the answer is community property not subject to the lien of any judgment rendered.

Plaintiff, in its reply, denies that the defendant Peter Sandberg signed the application for the accommodation of the Wells Construction Company, and avers that he did so for the benefit and profit of both defendants and the community. Plaintiff sets up the recitals of paragraph 10 of the application as representations of the defendant Peter Sandberg that he had an interest in the Wells Construction Company's contract and of the benefit to the defendants of plaintiff's suretyship, by way of estoppel, and alleges that, at the time Peter Sandberg signed the application, the defendants were indebted to the Wells Construction Company to the amount sued for herein. Plaintiff further alleges the giving of notice to Peter Sandberg of the bringing of suit against it in British Columbia, in which notice he was called upon to defend that action, and alleges that the judgment obtained in that action is res adjudicata.

[1] In June, 1910, the Wells Construction Company applied to plaintiff for a surety bond in the amount of $25,000. The application was denied for want of indemnitors. Thereafter, on the 20th of June of the same year, another application was made, signed by the Wells Construction Company and, among other indemnitors, the defendant Peter Sandberg. This application contained the following provisions:

"IV. That the indemnitor will perform all the conditions of said bond, and any and all renewals and extensions thereof, on the part of the indemnitor to be performed, and will at all times indemnify and save the surety harmless from and against every claim, demand, liability, cost, charge, counsel fee (including fees of special counsel whenever by the surety deemed necessary), expense, suit, order, judgment, and adjudication whatsoever, and will place the surety in funds to meet every such claim, demand, liability, cost, charge, counsel fee, expense, suit, order, judgment, or adjudication against it by reason of such suretyship, and any and all renewals and extensions thereof, and before it shall be required to pay the same. * * *

"VI. That in the event of the surety deeming it advisable, or of the indemnitor requesting the surety, to prosecute or defend or take part in any action, suit or proceeding, appeal or writ of error, the indemnitor will, on being advised of the surety's intent so to do, or on making such request, place the surety in possession of funds or securities, approved by it, sufficient to defray any costs, charges, or expenses which it may incur in so doing, and to discharge any liability, order, judgment, or adjudication which may result therefrom, or from its said suretyship. The indemnitor will not ask or require the surety to remove, or join in any application for the removal of, any action or proceeding from the state court to the federal court, in any state where such action would in any way affect the surety's license or right to transact business. * * *

"IX. That, should any claim or demand be made upon the surety by reason of such suretyship, the surety shall be at liberty to pay or compromise the same, and the voucher or other evidence of payment, compromise, or settlement of any claim, demand, liability, cost, charge, expense, suit, order, judgment, or adjudication by reason of such suretyship, shall be prima facie evidence of the fact and of the extent of the indemnitor's liability therefor to the surety.

"X. That the surety also looks to and relies upon the property of the indemnitor, and the income and earnings thereof, and shall also at all times have the right to rely upon, look to, and follow and recover out of the property which the indemnitor now has or may hereafter have, and the income and earnings thereof, for anything due or to become due it, the surety, under this agreement, such suretyship having been by the surety entered into for the special benefit of the indemnitor and the special benefit and protection of the indemnitor's property, its income and earnings; the indemnitor being substantially and

beneficially interested in the award and performance of such contract and obtaining such suretyship."

This application was upon a printed form, evidently prepared by the plaintiff. Upon this application, plaintiff executed its bond in the sum of $25,000 to the Powell River Paper Company, conditioned for the indemnifying of that company against any failure on the part of the Wells Construction Company to perform its contract. The evidence introduced shows that the defendants were married in 1894; that all of the real property described in their answers is community property. In view of the terms of paragraph VI of the application above set out, it is not necessary for the plaintiff to prove that it has paid or satisfied the judgment obtained against it in order to prevail.

[2] Plaintiff and defendants have stipulated as to plaintiff's items of expense incurred in defending the suit in British Columbia in the amount of $1,556.20. The effect of this stipulation is to amend the complaint to that extent.

[3] A certified copy of the judgment obtained against it in British Columbia was offered by the plaintiff upon the trial. It was objected to as not properly certified or authenticated. The copy purports to be certified as a true copy by A. B. Pottenger, district registrar. There is impressed upon the copy what purports to be the seal of the Supreme Court of British Columbia. A certificate is attached of David L. Wilber, consul general of the United States of America in Vancouver, B. C., to the effect that A. B. Pottenger is a duly appointed and commissioned registrar of the province of British Columbia. The objection made is that there is no certificate by the consul general, or otherwise, that the signature to the copy is that of A. B. Pottenger. Further, that there is no certificate that A. B. Pottenger is the legal custodian of such records and that there is no certificate that the purported seal is the seal of said court.

Section 905, R. S., applies only to the authentication of records of judicial proceedings had in the states and territories. It is conceded that there is no statute providing for the authentication of judicial proceedings in foreign countries. No treaty touching the question has been called to the court's attention. Justice Gray in Hilton v. Guyot, 159 U. S. 113, 228, 16 Sup. Ct. 139, 40 L. Ed. 95, intimates that there is neither statute law nor treaty on the subject of foreign judgments.

[4] The defendants in their answers deny upon information and belief the allegation of the complaint as to the rendition of the judgment by the Supreme Court of British Columbia against the plaintiff. Plaintiff now contends that, the judgment being a matter of public record, the denial is insufficient. Plaintiff did not move against this denial in the answer, but raises the question upon the argument after the introduction of all the evidence.

The authorities are not uniform upon the question of whether it is incumbent upon the plaintiff to move to strike out such denial as sham in order to take advantage of such a situation. The weight of authority appears to be that he must do so. 1 Encyc. Pl. & Pr. 812, note; 31 Cyc. 200, 201, note 8. In the case of Wallace v. Bacon (C. C.) 86 Fed. 553, before Judge Ross, the matter came up on motion to strike

the denials from the answer. Objections of a not dissimilar nature have been held waived by not moving against them as a step preliminary to trial. Shepherd v. Baltimore, etc., R. R. Co., 130 U. S. 426, 433, 9 Sup. Ct. 598, 32 L. Ed. 970; Keator Lbr. Co. v. Thompson, 144 U. S. 434, 12 Sup. Ct. 669, 36 L. Ed. 495; Town of Denver v. Spokane Falls, 7 Wash. 226, 229, 34 Pac. 926; Howard v. Hibbs, 22 Wash. 513, 516, 61 Pac. 159. In Peacock v. United States, 125 Fed. 583, 60 C. C. A. 389, the motion to strike out a denial, where there was presumptive knowledge on the part of the defendant, was held to be the appropriate remedy. Where a motion to strike lies, a failure to interpose it is held to be a waiver. 31 Cyc. 718, 2. In order to deprive the defendants of the right, under the Code, to interpose such denial, the matter so denied must be presumptively within his knowledge. 1 Encyc. Pl. & Pr. 811; 31 Cyc. 200.

[5] The defendant has been held to have such presumptive knowledge, and not allowed to so deny allegations as to his personal acts, or those of his agent, or concerning public records to which he has access, or allegations that a judgment had been rendered against him. 1 Encyc. Pl. & Pr. 813, 814. No case has been called to the court's attention where it has been held that the defendant is presumed to know matters of record in foreign countries, and no persuasive reason has been advanced for so holding. The public record, the existence of which he may not deny upon information and belief, is a public record to which he has access, as the rule is stated in the Encyclopedia of Pleading and Practice above cited. A more exact statement of the rule is found in 31 Cyc. 200:

"Nor can facts which are readily accessible, by reason of being public records, or otherwise, be put in issue by such form of denial."

Having access in the sense in which these words are used includes, not only the legal right of access, but a reasonable opportunity to avail oneself of that right.

[6] In the complaint it is alleged that both of the defendants are, and were at all times in question, citizens and residents of the state of Washington. It may be presumed that the defendants would have the right in British Columbia to examine the records of the Supreme Court—that is, it may be presumed that they are public records of that province; but it is not reasonable to require a citizen of this country to journey to foreign lands to inform himself concerning the contents of public records there in order to qualify himself to answer a suit brought against him in this country.

[7] Having had notice of the pendency of the proceedings and been called upon to defend, defendant Peter Sandberg is now estopped to deny the conclusiveness of any judgment rendered. Robbins v. Chicago, 4 Wall. 657, 18 L. Ed. 430; Wash. Gaslight Co. v. District of Columbia, 161 U. S. 316, 16 Sup. Ct. 564, 40 L. Ed. 712, 719; Compagnie de Navigation Française v. Burley (D. C.) 183 Fed. 168, affirmed 194 Fed. 335, 115 C. C. A. 199.

[8] But, not having been a party to the action in British Columbia, nor shown to have had anything to do with its conduct, he has a right to insist on strict proof of the judgment, unless, in common with all

citizens of this commonwealth, he is presumed to know the contents of the records of the courts of British Columbia. Residents of this country are presumed to have knowledge of its laws and may be presumed to have knowledge of its records, but such does not apply to either the laws or the records of foreign countries. In Wallace v. Bacon (C. C.) 86 Fed. 553, Judge Ross held a defendant in the Southern district of California to have presumptive knowledge of the levying of an assessment by the Comptroller of the Currency against a national bank of the state of Missouri.

It may be said that the records of the Supreme Court of the province of British Columbia are not so distant as the records of which the defendant in that case was presumed to have knowledge; but, unless the fact of their being records of a foreign country is made the test, a party might be held to have presumptive knowledge of the records in Thibet or Patagonia. A party cannot in reason be required to acquaint himself with all the records of the countries of the globe. To draw the line at the boundaries of his own country seems more reasonable than to extend it to the confines of Christendom, or to the countries having the civil or common law, or all. In Oregon Ry. Co. v. Oregon Ry. & Nav. Co. (C. C.) 22 Fed. 245, at pages 247, 248, Judge Deady writing the opinion, it is said:

"Now, upon the facts stated in this case, there can be no presumption that the defendant has any personal knowledge concerning the existence or contents of the documents made and registered in Great Britain, by means of which the plaintiff claims to have become a corporation. How can such presumption arise? The defendant was an utter stranger to the proceeding, and there is no evidence that it, or those who represent it, and through whom its knowledge must come, ever saw or examined the documents for any purpose. Neither is a party under any obligation to inform himself concerning any matter of fact, so that he may answer an allegation relating to it positively, unless it be to recall and verify that knowledge or information of the matter which he once had and is still presumed to have, but which may have become dim or confused in his mind by reason of the lapse of time or other circumstances. And if such a denial is improperly made, it may be stricken out as sham—manifestly false, in fact. But it is not for that reason either 'frivolous' or 'immaterial.' That depends wholly on the character of the allegation denied. If that is material, the denial of all knowledge or information concerning it is also material."

This case was reconsidered in (C. C.) 23 Fed. 232. While nothing is said in the latter opinion to indicate a change in the rule as announced in the former case, the defendant was not allowed to question plaintiff's corporate existence; the effect of the ruling being that, having contracted with the plaintiff as a corporation, defendant would be estopped to deny its corporate existence. Cowie v. Ahrenstedt, 1 Wash. 416, 418, 419, 25 Pac. 458; Vassault v. Austin, 32 Cal. 597. The latter case is cited with approval in 1 Wash. 419, 25 Pac. 458.

Having reached the conclusion that defendant's denials were sufficient, it is not necessary to determine whether the plaintiff waived its right to object to the form of denial by not interposing a preliminary motion to strike from the answer.

[9] No case has been cited holding a record of a foreign judgment, certified as in this case, admissible in evidence. The only case found that appears to sustain its admissibility is an early case in Vermont.

Woodbridge v. Austin, 2 Tyler, 364, 4 Am. Dec. 740. It was held in this case that the exemplifications of the record of a foreign judicial proceeding would be considered prima facie as correct. The great weight of authority, however, is to the contrary. 23 Cyc. 1611, 1612, note 54.

"In order that a foreign judgment should be admissible in evidence, it is necessary that the exemplification of it which is produced should be duly authenticated. And this authentication should consist of the seal of the court, if it has one, the certificate of the officer in whose custody the record remains, the attestation of the principal judge of the court to the official character of the person certifying, and the whole fortified by the certificate of the executive department of the state or country and the impress of its great seal." 2 Black on Judgments, p. 849; Cruz v. O'Boyle (D. C.) 197 Fed. 824.

No reason is shown for any exception in the present case to the rule embodied in the foregoing.

[10] The defendant Mathilda Sandberg had no knowledge that Peter Sandberg had signed the application to plaintiff for its execution of the surety bond. All of the evidence is to the effect that neither of the defendants had any financial interest in the Wells Construction Company; that Peter Sandberg signed the application at the request of Simon Mettler, an old friend of his. Joseph Wells, the secretary of the Wells Construction Company, also asked him to sign, but he received nothing for so doing. There was no understanding that he should receive anything. The only matter between the defendants and the Wells Construction Company, at the time of signing this application, was that the Wells Construction Company was then constructing a building for defendants. This building was substantially completed and paid for at the time of the signing of this application. It was paid for entirely in cash by Peter Sandberg, and there was no consideration of value passed to either of the defendants on account of the signing of the application, nor was anything contemplated. The Wells Construction Company was then in good financial standing.

Under these circumstances, it is clear that the mere fact that the defendant Peter Sandberg had, at the time of signing the application, other contractual relations with the Wells Construction Company, would not make him other than an accommodation indemnitor, and, of itself, would not make a debt growing out of the indemnity agreement the debt of his wife or the community. The fact that Peter Sandberg paid, direct, certain materialmen furnishing supplies for the construction of the Kentucky Liquor Company building under a contract with the Wells Construction Company is not unusual conduct under such circumstances. His becoming an indemnitor for the Wells Construction Company is inconsistent with the claim that he then feared or believed the Wells Construction Company was not financially sound, and that, thereby, he would protect any community interest in the completion of the Kentucky Liquor Company building.

The community property statute of the state of Washington provides:

"Property not acquired or owned, as prescribed in sections 2400 and 2408 [by gift, devise, or inheritance] acquired after marriage by either husband

or wife or both, is community-property. The husband shall have the management and control of community personal property, with a like power of disposition as he has of his separate personal property, except he shall not devise by will more than one-half thereof."

Debts incurred by the husband in the prosecution of any business, which, if successful, will result in profit to the community, are community debts. McDonough v. Craig, 10 Wash. 239, 241, 38 Pac. 1034. If all debts incurred by the husband are prima facie community debts, as indicated in the foregoing decision, that prima facie presumption is conclusively overcome by the evidence in the present case, showing that no profit or benefit could result to the community from the act of Peter Sandberg in signing the application or from the transaction or business with which it was connected. In Milne v. Kane, 64 Wash. 254, 116 Pac. 659, 36 L. R. A. (N. S.) 88, Ann. Cas. 1913A, 318, and Woste v. Rugge, 68 Wash. 90, 122 Pac. 988, where the community was held liable for the tort of the husband, it was only so held upon the finding that the tort committed by him was while engaged in a business conducted for the benefit of the community. In McGregor v. Johnson, 58 Wash. 78, 107 Pac. 1049, 27 L. R. A. (N. S.) 1022, where the community was held liable for the successful fraud practiced by the husband, it was only so held upon a finding that the wrongful profit from the fraud enured to the benefit of the community.

The community is liable where the husband signs an obligation as surety or accommodation maker for a corporation in which he is a stockholder or director; but if not interested in such corporation at or prior to the time of incurring such obligation, the community is not liable. Horton v. Donohoe Kelly Bank Co., 15 Wash. 399, 46 Pac. 409, 47 Pac. 435; Shuey v. Holmes, 20 Wash. 13, 54 Pac. 540; Shuey v. Holmes, 22 Wash. 193, 60 Pac. 402. The community will be estopped to deny the husband's debt incurred for the benefit of the community and with the wife's knowledge. McGregor v. Johnson, 58 Wash. 78, 107 Pac. 1049, 27 L. R. A. (N. S.) 1022. But it will not be estopped where the husband incurs the debt without the wife's knowledge, and it is not in the prosecution of community business, and cannot, in the ordinary course, result in any benefit to the community. Brotton v. Langert, 1 Wash. 73, 23 Pac. 688; Gund v. Parke, 15 Wash. 393, 46 Pac. 408; Bird v. Steele, 74 Wash. 68, 70, 132 Pac. 724; Spinning v. Allen, 10 Wash. 570, 39 Pac. 151.

Another one of the indemnitors, a stockholder in the Wells Construction Company, promised to indemnify Peter Sandberg for signing the application in question. Later Peter Sanberg brought a suit to enforce this provision for indemnity. He also, about the time he signed the application in question, became security on certain notes of the Wells Construction Company. Later, after that company got into financial difficulties, its stock was delivered to the attorneys for Peter Sandberg, pending an investigation by him as to whether he would undertake the completion of the company's work in British Columbia in order to save himself. He also caused certain property to be deeded over to a company of which he owned the stock; the object of such transaction being to secure certain notes upon which he had become security. The result would be an indemnification of himself propor-

tioned to the value of the property as transferred. A large amount of evidence has been taken in connection with these later transactions, but nothing more is shown in any of them than an attempt by Peter Sandberg to save himself, so far as he could, from the liability he had incurred on account of the Wells Construction Company. There is nothing in any of these transactions to show in any way a chance of benefit or gain to the community. The effect of lessening the loss flowing from these obligations would not make community business out of his separate affairs.

Plaintiff is entitled to judgment against Peter Sandberg for its expenses, fixed by the stipulation at $1,556.20 and interest thereon. This case having been tried to the court without a jury, at the time the exemplification of the record of judgment was offered in evidence by the plaintiff, and objection made, the record was admitted tentatively, a final ruling being reserved. Having reached the conclusion that the objection should have been sustained, it is clear that failing to rule finally at the time of the offer, the plaintiff may have been prejudiced in that, if such ruling had then been made, plaintiff could have asked for a continuance in order to supply a legal authentication of the copy. The making of findings and final judgment herein will be delayed 10 days to afford the plaintiff an opportunity to move to reopen the case for such purpose.

It is not necessary to determine whether the recital of interest in paragraph 10 of the application estops Peter Sandberg, as he is bound in any event. No right of recovery has been established against Mathilda Sandberg or the community. The debt established is that of Peter Sandberg, and the community real estate is not subject to any lien on account of the judgment herein.