## LOPEZ v. GAUTIER.

### No. 2443.

Circuit Court of Appeals, First Circuit.

June 5, 1930.

Jose R. F. Savage, of New York City (Leopoldo Feliu, of San Juan, Porto Rico, on the brief), for appellant.

Henry G. Molina, of San Juan, Porto Rico, for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge.

On a record of over 300 pages, the court below found that the defendant, from November, 1910, to November, 1924, was the attorney in fact, agent, or representative in Porto Rico of Rafaela Folguera-Rijos, for herself and as tutor (guardian) of her incapacitated sister, Mariana, both of whom during all these years resided in Spain; that the defendant, as such agent, was guilty of breach of trust and fraud upon his principals; was liable for various large designated sums and required to account generally; that the plaintiff is the sole heir of said Rafaela, who in turn was sole heir of her sister Mariana.

The case comes to this court on a highly unsatisfactory record, prepared and printed in Porto Rico. Apparently much of the parol evidence, as well as the numerous letters and documents, was in Spanish; and the translations leave the meaning in doubt, or at least confusing. The reduced narrative form of the evidence is far from clear. Many lengthy and material documents are presented by brief descriptions only. The available evidence of plaintiff at the beginning of the trial consisted mainly of 37 letters written by the defendant from January 10, 1911, to May 5, 1926, and copies of various legal documents. Both of the elderly women whose rights were in question had died, Mariana on February 21, 1927, and Rafaela, on June 23, 1927.

At the trial, plaintiff's counsel called the defendant as his first and chief witness. In effect, the case, made and sustained by the trial court, was grounded on the defendant's letters, his own testimony, much of it obviously false and conflicting, and data derived from his bank accounts.

The appellant's brief was prepared in the United States by counsel not present at the trial, who could deal with this confusing and inadequate record no more competently and efficiently than can this court. Under such circumstances, his zealous and painstaking efforts have resulted, as appeared at the oral argument, in a brief, containing errors, and in several highly technical contentions, in no way affecting the real merits of the case. The defendant's gross fraud and breach of fiduciary duty are indisputable—proven out of his own mouth. The record shows that the defendant in 1920 went to Spain, and on July 29, 1920, procured from Rafaela a deed of her share in four properties in San Juan, at a price of $10,392.70, less than an offer he then had therefor from Casa de Espana; that in this deed he also included the interest of Rafaela and Mariana in 21 San Jose street, without any consideration whatsoever; that he had failed to pay over $8,833 out of $15,708, which he had collected for Mariana's share in these properties. He was ordered to pay over these sums, return the shares in 21 San Jose street, and account for rents unremitted.

On such a record there is an unusually strong presumption in favor of the findings and rulings of the trial court, who not only saw the witnesses, including the defendant, but had before it pertinent documents, but meagerly and inadequately presented in this record.

The appellant's main contention is that the plaintiff failed to establish any title to the estate of Mariana, the incapacitated sister. This highly technical contention was apparently not relied upon in the trial court; for, in the latter part of the trial, the court denied the motion of the plaintiff's attorney to take the deposition of the plaintiff, the niece of Rafaela, who was living with her, probably at the time of her death. The niece of course knew what members of her aunt's family were still alive—all the essential facts to show Rafaela's heirship. It is a fair inference that the court's refusal to allow the existing evidence to be thus supplemented was based on a finding that it was not necessary to make out plaintiff's title. At any rate, the court found, as facts, that Rafaela was the sole heir of Mariana, and that the plaintiff was the sole heir, or residuary legatee, of Rafaela.

The court admitted in evidence a notary's certified copy of a judgment of the court of first instance of Lonja in Barcelona, dated August 9, 1928, to the effect that Mariana had died intestate and that Rafaela was her sole heir. This document was not au-

thenticated in accordance with the rules applicable to foreign judgments. American Surety Co. of N. Y. v. Sandberg (D. C.) 225 F. 150, 156; Church v. Hubbart, 2 Cranch, 187, 238, 2 L. Ed. 249; Stein v. Bowman et al., 13 Pet. 209, 10 L. Ed. 129; Cruz v. O'Boyle (D. C.) 197 F. 824; 2 Black on Judgments, p. 849.

This was error, but on this record not a reversible error. Cf. Jud. Code, § 269 (28 USCA § 391). The court made a flat finding that Rafaela was the sole heir of her deceased unmarried, sister, Mariana. There is, of course, no presumption that unmarried Mariana left a child as her possible heir. But, if we assume that there may be doubt as to the technical proof of Rafaela's legal rights as sole heir of Mariana, we discern no answer to the contention of appellee's counsel that, as guardian of her incapacitated sister, Mariana, Rafaela was entitled to all the rents, proceeds, and income of her ward's property.

The tutorship ended on Mariana's death on February 21, 1927, and it then became the duty of Rafaela to submit her account, under Civil Code, § 290, which reads:

"After the termination of the tutorship, the tutor *or his heirs* shall give an account of his administration to the person who was subjected thereto or to his representatives or those holding rights under him."

On Rafaela's death on June 23, 1927, this duty devolved on the plaintiff as Rafaela's testamentary heir. Defendant cannot escape liability for his frauds and breach of duty on this ground of failure of title in the plaintiff. Any possible error in admitting the informal record of judgment is plainly not enough to require this court to reverse the decree or to send the case back for a new trial.

The next point urged by counsel for the appellant is of error in the seventh paragraph of the decree ordering the defendant to deliver over to the plaintiff Mariana's share in 21 San Jose street. It is urged that there is no evidence that Mariana had any such interest, and that the defendant testified that she had none. Obviously, the defendant's testimony concerning his principal's property rights was not required to be believed by the trial court. Much of it was clearly false.

It is enough to say, as to this contention, that the error in the decree, if any in that particular, is immaterial. Fairly interpreted, the decree orders the defendant to transfer to the plaintiff only whatever interest both Rafaela and Mariana had in this property. Its extent and operation are limited to the defendant's acquisitions by his fraudulently obtained deed of July 29, 1920.

The next contention is that the right to attack the deed of July 29, 1920, is barred by sections 1266 and 1268 of the Civil Code, which limit actions of rescission and of nullity to four years. But these sections are not applicable to a case like this of concealed fraud by an agent on his principals.

"It is an established rule of equity, as administered in the courts of the United States, that, where relief is asked on the ground of actual fraud, especially if such fraud has been concealed, time will not run in favor of the defendant until the discovery of the fraud, or until, with reasonable diligence, it might have been discovered." By Mr. Justice Harlan in Kirby v. Lake Shore, etc., R. R., 120 U. S. 130, at page 136, 7 S. Ct. 430, 433, 30 L. Ed. 569, citing Meader v. Norton, 11 Wall. 442, 458, 20 L. Ed. 184; Prevost v. Gratz, 6 Wheat. 481, 5 L. Ed. 311; Michoud v. Girod, 4 How. 503, 561, 11 L. Ed. 1076; Veazie v. Williams, 8 How. 134, 149, 158, 12 L. Ed. 1018; Brown v. Buena Vista County, 95 U. S. 157, 24 L. Ed. 422; Rosenthal v. Walker, 111 U. S. 185, 190, 4 S. Ct. 382, 28 L. Ed. 395; 2 Story Eq. § 1521a; Angell on Limitations. For a late application of the same principle, see Schindler v. Spackman (C. C. A. 8th) 16 F.(2d) 45, at page 48. See, also, Civil Code P. R. §§ 1362, 1865, 1873; McIntire v. Pryor, 173 U. S. 38, 54, et seq., 19 S. Ct. 352, 43 L. Ed. 606, and cases cited; Michoud v. Girod, 4 How. 503, 564, et seq., 11 L. Ed. 1076. This case dealt with such a fraud 36 years old. Stanwood v. Wishard (C. C.) 134 F. 959, 964.

The fourth point in this brief—of inadequate evidence of any amount due by appellant from the rentals of the properties of Rafaela—is grounded merely on the inapplicable theory that, because the plaintiff called the defendant as a witness, the court was bound to accept the defendant's testimony that he had paid over all the rents, as true, in spite of the fact that the documents, mainly his own letters, showed this testimony to be utterly untrue. The amount of rentals unremitted was fully proved from data from defendant's own bank accounts. There is no merit in any of these contentions.

By the eighth paragraph of the decree he was ordered to render a true account of ren-

tals collected by him and not remitted. This decree was dated May 11, 1929; under date of May 17, 1929, the parties stipulated, after examining data from the banks, that the rentals covered by paragraph 8 amounted to $13,888.41, of which defendant had remitted $8,292.80, leaving him liable for $5,594.61, besides interest.

The general result is that we find no reversible error.

The decree of the District Court is affirmed, with costs to appellee.